Argued at Pendleton, May 3, affirmed June 1, 1920.

## MILLER *v.* CONLEY.*

(190 Pac. 301.)

**Adverse Possession—Evidence—Gift by Father to Daughter.**

1. In a daughter's suit to quiet title to land claimed to have been given her by her father, evidence *held* to show that the father made a parol gift of the land to the daughter, at which time she took possession of the land as her own, and continued in exclusive occupancy under the gift.

> [On presumption and burden of proof of undue influence in case of conveyance intervene as between parent and child, see notes in 17 Ann. Cas. 989; Ann. Cas. 1915D, 711.]

**Adverse Possession—Gift of Land by Parol—Possession for Ten Years Gives Fee-simple Title.**

2. Where a gift of land is made by parol, and the donee takes possession, adverse possession is established, which, continued for ten years, gives the donee a fee-simple title.

**Waters—Diversion for Less Than Ten Years—No Vested Right.**

3. Where a father made a parol gift of land to his daughter, and, after her adverse possession had ripened into a fee-simple title, the father went on the land and laid a pipe-line diverting water to other

---

*Authorities passing on the question of adverse possession by donee under parol gift are collated in a note in 35 L. R. A. 835. REPORTER.

premises, the diversion not having continued for ten years, and the consent of the daughter not having been obtained, it did not amount to a vested right in the father.

Waters—Pleading—Insufficient to Confer Right—Quiet Title.

4. In a daughter's suit to quiet title against her father, who made a parol gift of the land to her, and against her brother, claiming right to control waters flowing in a ditch, answer of the brother, stating merely that he had the right to use the waters of the ditch for irrigating his lands, *held* insufficient to confer on him any right to the water.

From Union: John W. Knowles, Judge.

In Banc.

The plaintiff brought this suit against her father, A. B. Conley, and her brother, J. Frank Conley, and their wives, respectively her mother and her sister-in-law, to quiet her title in 80 acres of land in Union County, claiming that her father had given her the tract in 1900, in pursuance of which she and her husband had left their residence on land owned by the latter, had taken possession of the 80-acre tract and had held the same adversely to all other claimants ever since. The mother disclaims all title in the property. The father denied the gift and averred in substance that the plaintiff had occupied the land by his permission, subject to his right to resume possession of the same at his pleasure. J. Frank Conley, answering with his wife, averred the title of his father and that his acts respecting the land were performed only as the father's agent. Claiming that he reserved the right to go upon the premises and make whatever improvements he chose for his own benefit or the betterment of the lands, so long as the plaintiff's use of the same as a residence was not interfered with, the father pleads that at his own expense and without objection from the plaintiff or her husband he constructed a pipe-line on the land for the purpose of carrying water from a spring to

other lands occupied by his son. Specifically revoking the permission which the father says he granted to the plaintiff to use the premises, he prays that he be declared to be the legal owner of the land free from all claim of the plaintiff.

In addition to what has been stated of the brother's answer, that defendant pleads that on June 28, 1918, he became the owner of certain lands adjacent to that in dispute, and then avers:

"That from time immemorial has flowed and now flows in a well-defined channel and ditch from other lands to and across the lands described in the complaint to and upon the hereinabove described lands of defendant J. Frank Conley, a stream of water, and that the waters of said stream are used by defendant on and necessary for irrigating defendant's said lands.

"That this defendant, J. Frank Conley, has the right and is entitled to the use of the waters of said stream for irrigating his land and for stock water thereon, and that it is necessary for him to go along and upon the said ditch and watercourse over the lands described in the complaint for the purpose of cleaning out and repairing said ditch and making necessary repairs thereto for the purpose of conducting water therein to his said land and that prior to the 28th day of June, 1918, he, said defendant, for and in behalf of A. B. Conley, the then owner of the said lands now owned by this defendant exercised the said right for and in behalf of the then owner of said lands and the then owner of the lands described in the complaint, and that, for more than eighteen years prior to the filing of this complaint, the predecessors in title of this defendant have under claim of right and openly and notoriously used said stream through said ditch and stream on the land described in the complaint and under claim of right thereto."

The reply traversed the new matter of the answers
except the averments of the relationship of the par-
ties. The Circuit Court heard the testimony on the
issues thus framed and rendered a decree for the
plaintiff substantially according to the prayer of the
complaint. An appeal was taken by the defendants,
except the plaintiff's mother, who had a decree for
costs on her disclaimer.                     AFFIRMED.

For appellants there was a brief and an oral
argument by *Mr. James D. Slater.*

For respondent there was a brief and an oral
argument by *Mr. John S. Hodgin.*

BURNETT, J.—The testimony of the plaintiff
and of her husband is to the effect that in June,
1900, the father, A. B. Conley, gave to his daughter
the tract of land in dispute, in pursuance of which
they went upon it, took possession thereof, and used
it as her own continuously from that time forward,
making sundry valuable improvements thereon. By
at least three disinterested witnesses they proved
that at about that time and subsequently on different
occasions the father told the witnesses that he had
given the 80-acre tract in dispute to his daughter,
the plaintiff. At the time his testimony was taken,
the father was past eighty-two years of age, and, as
he admits, his memory was impaired. When his at-
tention was called to the declarations imputed to him
by the witnesses, he stated that he had no recollec-
tion of making them. He stoutly maintained, how-
ever, in general, that he only intended to allow his
daughter to live on the land at his pleasure, and that
she went there and remained there by his permis-
sion under those conditions. The mother says sub-

stantially that such was the intention of herself and
her husband. But she does not give any detailed
statement of what the father, her husband, who was
the owner of the land, said on the subject to the
daughter. There is no pretense that the father or
anyone for him entered upon the lands and laid the
water-pipe or did any other act of the kind prior to
the expiration of ten years' possession by the plain-
tiff.

1. A detailed analysis of the testimony as in argu-
ment before a jury would not add anything to the
sum of legal knowledge to be preserved in the re-
ports. It is sufficient to say that a careful study of
the record convinces us that the Circuit Court was
right in its decision on the facts of the case, to the
effect that the father made a parol gift of the land
to his daughter in June, 1900, at which time she took
possession of the property as her own and continued
in exclusive occupancy of the same ever afterwards
under that gift. This establishes the controlling
fact in the case, to wit, a parol gift by the father to
the daughter, coupled with her continued adverse
holding of the property for nineteen years and more.

In *Allen* v. *Allen,* 58 Wis. 202 (16 N. W. 610), a
father had entered a pre-emption on certain lands in
the name of his minor son, then about five years of
age. The father continued to occupy the land, the
son remaining a member of his family and living
there also until some years after reaching majority.
It is stated in the opinion that there is no evidence
in the case showing that the father asserted any title
to the land hostile to the title of his son, unless his
possession, use of and improvement of the same for
over thirty years is evidence of such assertion of
title, until a few months before his death, when he

claimed it in conversation with a third party. In the course of its discussion of the ejectment action brought by the son against one claiming under the father, the court used this language:

"Had there been no evidence in this case bearing upon the question of adverse possession except the fact that the defendant and those under whom she claims had been in the actual possession and use of the land, cultivating and improving the same, having the same assessed as their lands, and paying the taxes thereon, and in other respects using said land as the owners usually do, for more than twenty years before the commencement of the plaintiff's action, we are of the opinion that the defendant would have been entitled, at least, to have had the question of their holding adversely to the plaintiff submitted to the jury, and, perhaps, to have a verdict directed in her favor."

The case turned upon the point that the testimony clearly showed that the father admitted the son's title continuously until a short time before his death.

In *Murphy* v. *Newingham,* 151 Ky. 360 (151 S. W. 930), the principle is thus stated:

"It is well settled that where there is an unconditional parol gift of a well-defined body of land, accompanied by an actual possession for fifteen years or over, with claim of ownership, such possession ripens into title, and the donor cannot recover the land. If, however, one enters upon land by the owner's permission, expecting that the owner will give it to him, then such possession is not a hostile holding. * * If the gift was made at that time, then the holding of the plaintiffs was adverse from that moment, and, having held the land for more than fifteen years, their possession ripened into title."

That was a case where a son sought to enforce an alleged parol gift of land by his father to himself. The law was as stated above, but the facts showed

that no gift was made or intended, and hence the son failed to establish title. These cases are cited from the brief for the defendants, but lately the question was examined at length in *Parker* v. *Kelsey,* 82 Or. 334 (161 Pac. 694), an almost identical case, in which we reached the conclusion that a parol gift of land is adequate to the initiation of an adverse possession by the donee, which being continued for the statutory period of ten years is sufficient to establish a fee-simple title in the one to whom the gift was made.

2. The fallacy in the argument for the defendants here lies in the apparent assumption that permission is not sufficient to inaugurate an adverse possession. Such, however, is not the true principle, for even the cases cited by the defendants lay down the doctrine that a gift of land by parol, itself permissive in its character and voluntary in its inception, establishes the beginning of an adverse possession. Indeed, if Jones goes upon Brown's land armed with a shotgun, drives off the latter, and remains there in that attitude for ten years, claiming the land as his own, adverse possession is established, accruing upon which is the fee-simple title in the lands. Such, or a similar, display of force, however, is not an absolute requisite; for it is competent for Brown to give the land to Jones by parol, vacating it and allowing the latter to remain there for ten years under those circumstances, with the same result as before. The doctrine the defendant seeks to apply relates to permission merely to occupy and in subordination to the legal title of the one granting the permission. It does not include possession given with design to confer the legal title upon the one who assumes the occupancy.

3. It remains to consider the questions about water, mentioned in the pleadings. As to the diversion of the spring, the defendants plead that A. B. Conley, operating in fact through his agent, the defendant son, went upon the land as owner and laid the pipe-line conducting the water to other premises. This however, according to the testimony, was not done until after the adverse possession of the plaintiff had continued for more than ten years and hence had ripened into a fee-simple title in the latter. If that had been done within the statutory period, it might have constituted an interruption of the continuity of the plaintiff's adverse possession and have so defeated it as a means of acquiring title. The diversion of this water, under those circumstances, however, not having continued for ten years, and the consent of the plaintiff thereto not having been stated in the answer, it does not amount to a vested right in the defendants. In other words, their proof does not show an adverse maintenance of the right in the land of the plaintiff sufficient to establish title in the water by prescription. That is to say, the testimony discloses title to the lands in the daughter by adverse possession at the time the water was diverted, with the deduction that the allegation of the defendants that they went upon their own land and diverted the water is not proved, and with the further deduction that they have not shown title in themselves by adverse use of the water for ten years.

The defendant brother states only conclusions of law in his attempt to control the waters flowing in the ditch mentioned in his answer. The particular language alluded to is this:

· "That this defendant, J. Frank Conley, has the right and is entitled to the use of the waters of said

stream for irrigating his land and for stock water thereon and that it is necessary for him to go along and upon the said ditch and watercourse over the lands described in the complaint for the purpose of cleaning out and repairing said ditch,'' etc.

The pleader does not claim to have appropriated the water within the legal meaning of that term. At best, he indicates only a right as a riparian proprietor. In the syllabus to *Porter* v. *Pettengill,* 57 Or. 247 (110 Pac. 393), condensing the opinion written by Mr. Justice EAKIN, it is said:

''A complaint to determine the priority of irrigation water rights is insufficient where it does not definitely describe plaintiff's lands, and does not show that any particular land needed irrigation, does not specify the amount of water diverted nor the amount needed to the acre, or for any specific land, and does not show how much water plaintiffs' grantors acquired a right to use; an allegation that plaintiffs were entitled to all the water in a creek during the dry season being too indefinite.''

4. Measured by this standard, the answer of J. Frank Conley is insufficient to confer upon him any right to the water in the ditch mentioned. Whatever the attitude of the parties may have been at the time the pipe-line was laid, whether friendly or otherwise, and whether a license grew out of the arrangement or not, are not matters for us to decide in this suit, because there is no pleading upon which such a determination could rest.

It follows that the decree of the Circuit Court must be affirmed.                          AFFIRMED.