[Civil No. 3613. Filed October 28, 1935.]

[50 Pac. (2d) 888.]

JOHN W. CONNESS and B. J. CONNESS, Appellants, v. PACIFIC COAST JOINT STOCK LAND BANK OF SAN FRANCISCO, a Corporation, Appellee.

Mr. J. Fred Hoover, for Appellants.

Mr. Fred L. Ingraham, for Appellee.

LOCKWOOD, C. J.—This is an appeal from a judgment of the superior court of Yuma county enjoining defendants against interfering with plaintiff's use of a certain strip of land belonging to defendants as a right of way for an irrigation ditch. The case was tried to the court without a jury, and judgment was rendered in favor of plaintiff enjoining the defendants from interfering with the right of way aforesaid, in accordance with the prayer of the complaint, and from such judgment this appeal is taken.

There is but one question presented by the assignments of error, and that is whether or not the evidence sustains the judgment. There is no dispute whatever as to the facts of the case, and they may be

stated as follows: In 1917, J. W. Clymer was the owner of the W. ½ of the S. W. ¼ of Sec. 20, T. 9 S., R. 24 W., G. & S. R. B. & M. At this time there was on the north end of said land an irrigation ditch, running across the entire 80 acres and supplying the adjoining 80 acres, consisting of the E. ½ of the N. W. ¼ of said section, with water, the exact date of its construction not appearing in the record. The land irrigated by it was known as the "Reed land" and the ditch was called the "Reed ditch." The Reed land was cultivated by various persons from 1917 to 1924 using water through the Reed ditch with the full knowledge of Clymer, and with no objection thereto on his part. In 1924 Clymer sold his land to John W. Conness and B. J. Conness, hereinafter called defendants. The deed was one of full warranty excepting, however, "rights of way for public roads, irrigation canals and ditches existing thereon." Before defendants received the deed they had discovered that the Reed ditch existed on the land which they were purchasing and asked Clymer to make a reduction in price on account of the land occupied by the ditch. He refused to do so, and after some discussion they accepted the deed and went into the possession of the premises. At this time a man named Dean was farming the Reed land, and shortly after defendants went into possession of the Clymer land, B. J. Conness had a conversation with Dean when he was cleaning the ditch and told him that it was on the land which defendants had purchased, and that they were going to fill it in. Nothing further was said by either of defendants to anyone in regard to the matter, and they made no effort to molest the ditch or to interfere with its use until 1933, although it was used continuously to irrigate the Reed land till that time. In that year the Reed land was owned by the

Pacific Coast Joint Stock Land Bank of San Francisco, a corporation, hereinafter called plaintiff, but was being operated by C. E. Freeman. In the month of November, 1933, defendants plowed up the ditch in question and leveled the ground and seeded it to alfalfa, stating to Freeman that the ditch was on their land. Thereafter, this action was brought.

Plaintiff claims a right of way for the ditch in question by prescription under the provisions of section 2051, which reads, so far as material, as follows:

"§ 2051. Ten year limitation; extent of possession. Any person having a right of action for recovery of any lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using and enjoying the same, shall institute his action therefor within ten years next after his cause of action has accrued, and not afterward."

Defendants, on the other hand, contend that plaintiff and its predecessors have not been in peaceable and adverse possession of said land for the ten years required by the statute, basing their claim upon the notice which B. J. Conness gave to Dean in 1924. If this notice was not sufficient to break the peaceable and adverse possession, which under the evidence had commenced at least as early as 1917, plaintiff has undoubtedly established its title by prescription to the right of way for the ditch above referred to.

The question of law for us, then, is whether or not peaceable possession can be interrupted by a mere verbal protest which does not proceed any further. The decisions are in sharp conflict upon this point. In several of the states it is held that where the owner of land by a verbal act or protest on the premises in which the easement is claimed resists its exercise and denies its existence, his acquiescence therein is thereby disproved, and peaceable possession does not exist. *Chicago & Northwestern Railroad Co.* v. *Hoag,*

90 Ill. 339; *Powell* v. *Bagg,* 8 Gray (Mass.), 441, 69
Am. Dec. 262; *Andries* v. *Detroit, G. H. & M. R. Co.,*
105 Mich. 557, 63 N. W. 526; *Ingraham* v. *Hough,*
46 N. C. 39; *Reed* v. *Garnett,* 101 Va. 47, 43 S. E. 182;
*Dartnell* v. *Bidwell,* 115 Me. 227, 98 Atl. 743, 5 A. L. R.
1320.

On the other hand, there are many states which
take a contrary view. *Kimball* v. *Ladd,* 42 Vt. 747;
*Ferrell* v. *Ferrell,* 1 Baxt. (Tenn.) 329; *Demuth* v.
*Amweg,* 90 Pa. 181; *Cox* v. *Clough,* 70 Cal. 345, 11
Pac. 732; *Chavez* v. *Torlina,* 15 N. M. 53, 99 Pac. 690;
*McIntyre* v. *Harvey,* 158 Miss. 16, 128 So. 572, 130
So. 5; *Connor* v. *Sullivan,* 40 Conn. 26, 16 Am. Rep.
10; *Lehigh Valley Railroad Co.* v. *McFarlan,* 43
N. J. L. 605. After a careful examination and con-
sideration of the foregoing cases, we are of the opin-
ion that the rule contended for by plaintiff is the
soundest. The theory on which it is based was well
stated in *Lehigh Valley Railroad Co.* v. *McFarlan,*
*supra,* as follows:

"The whole doctrine of prescription is founded on
public policy. It is a matter of public interest that
title to property should not long remain uncertain
and in dispute. The doctrine of prescription con-
duces, in that respect, to the interest of society, and
at the same time is promotive of private justice by
putting an end to and fixing a limit to contention
and strife. . . . If such protests and denials, un-
accompanied by an act which in law amounts to a dis-
turbance and is actionable as such, be permitted to
put the right in abeyance, the policy of the law will
be defeated, and prescriptive rights be placed upon
the most unstable of foundations. Suppose an ease-
ment is enjoyed, say, for thirty years. If after such
continuance of enjoyment the right may be over-
thrown by proof of protests and mere denials of the
right, uttered at some remote but serviceable time
during that period, it is manifest that a right held
by so uncertain a tenure will be of little value. If the

easement has been interrupted by any act which places the owner of it in a position to sue and settle his right, if he chooses to postpone its vindication until witnesses are dead or the facts have faded from recollection, he has his own folly and supineness to which to lay the blame. But if by mere protests and denials by his adversary, his right might be defeated, he would be placed at an unconscionable disadvantage. He could neither sue and establish his right, nor could he have the advantage usually derived from long enjoyment in quieting titles.

"Protests and remonstrances by the owner of the servient tenement against the use of the easement, rather add to the strength of the claim of a prescriptive right; for a holding in defiance of such expostulations is demonstrative proof that the enjoyment is under a claim of right, hostile and adverse; and if they be not accompanied by acts amounting to a disturbance of the right in a legal sense, they are no interruptions or obstructions of the enjoyment."

But even if this were not true as a matter of common law, we think our own statute would conclusively settle the question in favor of plaintiff. Both peaceable and adverse possession are defined in section 2055, Revised Code 1928, as follows:

"§ 2055. Terms defined. 'Peaceable possession,' within the meaning of this chapter is such as is continuous, and not interrupted by an adverse action to recover the estate; 'adverse possession,' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

It will be seen the former is declared to be a "continuous" possession which is not interrupted "by an adverse action to recover the estate." We think it clear that under our statute, unless a possession is physically interrupted so that it cannot be held to be continuous, or else an adverse action is brought to recover the estate, it is peaceable possession

within the meaning of section 2051, *supra.* That the possession of plaintiff and its predecessors was adverse is obvious. Since it appears from the undisputed evidence that plaintiff had peaceable and adverse possession of the right of way in question, using and enjoying it for more than ten years before defendants interrupted its possession by plowing up the ditch in question, the trial court properly rendered judgment as it did.

Judgment affirmed.

McALISTER and ROSS, JJ., concur.