442 P.2d 107

Carl TENNEY, Administrator of the Estate of Decedent, Jean V. Spear, Appellant,

v.

Dorothy LUPLOW, Appellee.

No. 8574.

Supreme Court of Arizona.

In Division.

June 13, 1968.

Carl Tenney and Anne Kappes, Phoenix, for appellant.

James E. Flynn and Allan K. Perry, Phoenix, for appellee.

LOCKWOOD, Justice:

Carl Tenney, administrator of the estate of Jean V. Spear (hereafter defendant) appeals from a judgment of the Superior Court, Maricopa County which quieted title to certain realty in the plaintiff, Dorothy Luplow.

The facts giving rise to this suit are mainly undisputed; the application of the law to the facts is the basis for defendant's appeal here.

J. W. Spear was the father of defendant's decedent J. V. Spear. In 1911, plaintiff Dorothy Luplow met J. W. Spear and his wife. They were quite fond of Dorothy and expressed, at one time, a desire to adopt her as their own child, but did not do so. Dorothy married Ronald Luplow in 1915. Mrs. J. W. Spear died in 1926 and in 1928, Dorothy Luplow and her family "moved in" with J. W. Spear at his residence in Phoenix, Arizona. At all times pertinent to this case, J. W. Spear's son, J. V. Spear, resided in or near Los Angeles, California.

On February 8, 1943, J. W. Spear died. His son was in Phoenix several weeks prior to the father's demise. On the day of the funeral, after interment, J. V. Spear, Dorothy and Ronald Luplow, the Luplow's daughter Winifred Kemp, and one Clyde Threlkeld, went to the Spear residence at 916 East McKinley, Phoenix, Arizona. Winifred Kemp testified that J. V. Spear was going through his father's papers, and after a short while, entered the room where the others were having coffee. She stated that J. V. Spear handed to Dorothy Luplow what was designated at trial as Plaintiff's Exhibit No. 1, which was an abstract of title to the residence at 916 McKinley Street, and said: "Dorothy, Dad wanted you to have the house. Here is the deed. I'll have no more use for it". This event occurred prior to the probate of the estate of J. W. Spear.

On June 27, 1946, the final accounting and decree of distribution were formalized on the records of the probate court, and all property of J. W. Spear's estate, including the two lots comprising the residence here in dispute, were distributed in their entirety to J. V. Spear.

The evidence disclosed that J. V. Spear returned to California; that the property taxes were assessed in the name of J. V. Spear, and that J. V. Spear paid the annual taxes on the property until 1950. Dorothy testified that she received a letter from J. V. Spear in 1950 to the effect that he "was damned tired of paying the taxes"; and that Dorothy should thereafter pay the taxes on the property. Since 1950, the evidence discloses that Dorothy has paid the taxes, and further, has made improvements to the property including repairs to the roof and has added a garage.

Jean V. Spear died intestate in Los Angeles, California, February 23, 1961, and left surviving him a half-brother, Charles W. Hartman, Sr. On March 31, 1961, Ronald Luplow executed a quitclaim deed of the property to plaintiff. Plaintiff testified that the deed was executed on advice of counsel "to put a cloud on the title". Defendant Tenney was nominated by Hartman to be administrator of the ancillary probate in Arizona, and was issued letters of administration on May 25, 1961.

On September 8, 1961, plaintiff received a letter from defendant acting in his capacity as administrator in which he demanded that she either vacate the premises or begin paying rent in the amount of $40.00 per month. Plaintiff on September 21, 1961 filed a complaint in the Superior Court of Maricopa County to quiet title and for declaratory judgment, in which she alleged that the property in question was her sole and separate property. She claimed it on the ground that she was in actual possession of the realty and had been in actual, exclusive, peaceable and adverse possession continuously for more than ten years and had paid the taxes thereon, and therefore defendant was barred from claiming title pursuant to the provisions of A.R.S. § 12–526 (1956).

Defendant filed his answer alleging that the property was inherited by his decedent at the death of his decedent's father February 8, 1943; that the taxes on the property had been paid by and in behalf of J. V. Spear, and that plaintiff had paid the taxes for the privilege of living on the premises. It was further asserted that a confidential relationship existed between plaintiff and defendant's decedent, and that decedent had permitted plaintiff the gratuitous use of the property by virtue of the alleged confidential relationship; that further, plaintiff had never asserted any claim or right, title or interest other than the gratuitous use of the property. Defendant also counter-claimed, praying that he be adjudged the owner of the property, and that judgment be entered against plaintiff for rent in the amount of $40.00 per month from June 1, 1961 until plaintiff should vacate the premises. All issues were joined, and the case was tried to the Court sitting without a jury.

The Court entered judgment for plaintiff on her complaint and on defendant's counterclaim. From that judgment, defendant brings this appeal contending that the evidence was insufficient to support a judgment based upon adverse possession. Defendant further contends that plaintiff is not entitled to the property for her failure to prove the parol gift of the property by clear and convincing evidence.

The pertinent portion of A.R.S. § 12–526 (1956) provides:

"A. A person who has a cause of action for recovery of any lands, tenements or hereditaments from a person having peaceable and adverse possession thereof, cultivating, using and enjoying such property, shall commence an action therefore within ten years after the cause of action accrues, and not afterward."

Section 12–521, subsec. A(1) A.R.S. (1956) defines "adverse possession" as "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another". Subparagraph (2) of this section defines "peaceable possession" to be "* * * possession which is continuous, and not interrupted by an adverse action to recover the estate". This Court in Gusheroski v. Lewis, 64 Ariz. 192, 197, 167 P.2d 390, 393 (1946) reiterated the principle laid down in Conness v. Pacific Coast J.S.L. Bk., 46 Ariz. 338, 50 P.2d 888 as follows:

"* * * 'Unless a possession is physically interrupted so that it cannot be held to be continuous, or else an adverse action is brought to recover the estate, it is peaceable possession within the meaning of [the statute].' "

And with regard to what constitutes "hostile possession" within the meaning of A.R.S. § 12–521 (1956), this Court held that:

" '[It] is not construed as implying actual enmity or ill will, but merely means that [the adverse possessor] claims to hold the possession in the character of an owner, and therefore denies all validity to claims set up by any and all other persons.' " Gusheroski v. Lewis, 64 Ariz. at 197, 167 P.2d at 393 (1946).

In Higginbotham v. Kuehn, 102 Ariz. 37, 424 P.2d 165 (1967) we noted that:

"A claim of right is nothing more than the intention of the party in possession to appropriate and use the land as his own to the exclusion of others irrespective of any semblance or shadow of actual title or right. Gunther & Shirley Co. v. Presbytery of Los Angeles, 85 Ariz. 56, 331 P.2d 257." 102 Ariz. at 38, 424 P.2d at 166 (1967).

The burden of proof is upon the person claiming title by adverse possession to show that the requisite elements thereof have been satisfied, and there are no equities favoring the establishment of his claim, Fritts v. Ericson, 87 Ariz. 227, 230, 349 P.2d 1107, 1109 (1960). The evidence must show that his possession was under a claim of right inconsistent with the claim of anyone holding the paper title, for "[p]ossession without some pretence or claim of right is not adverse". Mosher v. Arizona

Packing Co., 25 Ariz. 473 at 475, 219 P. 232 at 233 (1923). As is readily apparent, "[t]he basic requisite of adverse possession is that a cause of action accrue against a disseisor in order that the statute of limitation may begin to run". Gunther & Shirley Co. v. Presbytery of Los Angeles, 85 Ariz. 56, 58, 331 P.2d 257, 258 (1958). Therefore, it is necessary to determine the nature of plaintiff's original entry to the property, whether events subsequent to entry changed the nature of plaintiff's occupancy, whether plaintiff's possession became adverse to J. V. Spear, and whether plaintiff is now legally the title holder to the property here in dispute.

The defendant asserts that plaintiff's original entry to the property was permissive, and for that reason plaintiff's use and occupancy could not later ripen into an adverse holding. Moreover, defendant contends that while plaintiff was not by blood related to J. W. and J. V. Spear, nevertheless a "confidential" or "quasi-confidential" relationship arose to preclude plaintiff from acquiring the property by adverse possession.

 In support of the assertion that plaintiff's entry was permissive, defendant cites the case of Spillsbury v. School Dist. No. 19, 37 Ariz. 43, 288 P. 1027 (1930), which states:

> " * . * * It is contended by defendants, however, that the original occupancy of the premises was under a conditional oral permit from the original owner, and that under such circumstances adverse possession does not begin to run against the true owner, unless there is a positive disclaimer and disavowal of the owner's title by the occupant of a title in hostility thereto, notice of which is brought home to the landowner. This is undoubtedly true as a matter of law." 37 Ariz. at 47, 288 P. at 1029 (1930).

There is certainly no dispute that plaintiff originally entered and occupied the premises by permission of J. W. Spear; quite clearly, the nature of that occupancy was in subordination to J. W. Spear's title, for the Luplows and Spears occupied and used the property together and in apparent harmony. Yet that fact alone could not forever preclude plaintiff from claiming title adversely, particularly after the demise of J. W. Spear in 1943. Defendant places much emphasis upon the lack of legal efficacy of the alleged delivery of the abstract of title to plaintiff. True, an abstract of title could not be considered "color of title" within the meaning of A.R.S. § 12–523, subsec. B.[1] But one claiming title by adverse possession under § 12–526 A.R.S. (1956) need not show "color of title"; rather, the adverse claimant must show, *inter alia*, the "claim of right" noted supra. Our previous cases on this subject indicate that where a claimant has shown that the possession of the property was open, notorious, visible, continuous and uninterrupted, then the use of the property will be *presumed to be under a claim of right and not permissive.* Gusheroski v. Lewis, 64 Ariz. 192, 167 P.2d 390 (1946). And that requirement that the positive disclaimer and disavowal of the title in the true owner, *Spillsbury,* supra, by the adverse claimant has been "brought home to the landowner" implies that there must be some notice to the landowner.

> " * * * [A] claimant * * * must show such open, notorious, continuous, and visible adverse occupation and use under a claim of ownership as would constitute that adverse possession, use or enjoyment by which *either the presumption or the fact of notice and acquiescence upon the part of the title owner would arise to bar his right.*" Lewis v. Farrah, 65 Ariz. 320, 322, 180 P.2d 578, 579 (1947) [Emphasis added.] And see,

---

1. A.R.S. § 12–523, subsec. B (1956):
"'Title' means a regular chain of transfer from or under sovereignty of the soil. 'Color of title' means a consecutive chain of such transfer down to the person in possession without being regular * * *."

Walter v. Jones, 15 Ill.2d 220, 154 N.E. 2d 250 (1958).

We hold that the presumption of notice to the landowner may arise where there is shown, under all the facts and circumstances, a concurrence of the elements of adverse possession and the facts of use, possession and enjoyment indicating an intention on the part of the claimant to repudiate the title and interest of the landowner. See generally, McClenahan v. Stevenson, 118 Iowa 106, 91 N.W. 925 (1902); Sires v. Melvin, 135 Iowa 460, 113 N.W. 106 (1907).

Parol gifts of land are within the Statute of Frauds, A.R.S. § 44–101(6) (1956), yet plaintiff is not precluded from asserting her adverse claim even though she mistakenly thought her title was perfected by the delivery of the abstract of title. The character of plaintiff's possession is the crucial turning point here. In the case of Gunther & Shirley Co. v. Presbytery of Los Angeles, 85 Ariz. 56, 331 P.2d 257 (1958), a party purchased a certificate of tax sale to property owned by the church and thereafter entered the property, but before the statutory redemption period had expired. In holding that one who enters land under a tax sale certificate is a trespasser, and a cause of action accrues at the time of entry, this Court noted that

"Appellant may have been mistaken as to its rights under the certificate, but '"the intention and not the mistake is the test by which the character of the possession is determined * * * [citations omitted]"'." 85 Ariz. at 59, 331 P.2d at 259 (1958). Cf. Phoenix Jewish Community Council v. Leon, 102 Ariz. 187, 427 P.2d 138 (1967).

And, in Trevillian v. Rais, 40 Ariz. 42, 9 P.2d 402 (1932), where there had occurred a mistake as to boundary lines between abutting properties, and the property was being claimed by adverse possession, it was held that

"* * * In all cases the intention and not the mistake is the test by which the

character of the possession is determined; it being prima facie sufficient that actual, visible, and exclusive possession is taken under a claim of right without reference to the fact that the possession was based on mistake." 40 Ariz. at 46, 9 P.2d at 403 (1932).

In like regard, cases from other jurisdictions indicate that entry under a parol gift can nevertheless be adverse as against the true owner. In the case of Schafer v. Hauser, 111 Mich. 622, 70 N.W. 136, 35 L.R.A. 835 (1897), it was held:

"'Possession of land by a donee under a mere parol gift, accompanied with a claim of right, *is an adverse holding* as against the donor, which, if continued without interruption, is protected by the statute of limitations, and matures into a good title. That such a parol gift conveys no title, and only operates as a mere tenancy at will, capable of revocation or disaffirmance by the donor at any time before the bar is complete, is immaterial. *It is the evidence of the beginning of an adverse possession by the donee, which can only be repelled by showing a subsequent recognition of the donor's superior title*'". 111 Mich. at 623, 70 N.W. at 136 (1897). (Emphasis added.)

For a like holding, see Parker v. Kelsey, 82 Or. 334, 161 P. 694 (1916). And in Miller v. Conley, 96 Or. 413, 190 P. 301 (1920) it was stated

"The fallacy in the argument for the defendants here lies in the apparent assumption that permission is not sufficient to inaugurate an adverse possession. Such, however, is not the true principle, for even the cases cited by the defendants lay down the doctrine that a gift of land by parol, itself permissive in its character and voluntary in its inception, establishes the beginning of an adverse possession. Indeed, if Jones goes upon Brown's land armed with a shotgun, drives off the latter, and remains there in that attitude for 10 years, claiming the land as his own, adverse posses—

sion is established, accruing upon which is the fee simple title in the lands. Such, or a similar, display of force, however, is not an absolute requisite; for it is competent for Brown to give the land to Jones by parol, vacating it and allowing the latter to remain there for ten years under those circumstances, with the same result as before. The doctrine the defendant seeks to apply relates to permission merely to occupy land in subordination to the legal title of the one granting the permission. It does not include possession given with design to confer the legal title upon the one who assumes the occupancy." 96 Or. at 419, 190 P. at 303 (1920).

 We believe that the facts amply demonstrate plaintiff's intention to claim the property as her own adversely to J. V. Spear's interest therein. Her claim of right, use, occupancy and enjoyment were so open and adverse as to raise the presumption that J. V. Spear's title had been repudiated. The facts further indicate at minimum that J. V. Spear had notice of, and acquiesced in the adverse interest of Dorothy Luplow. The facts finally show that more than ten years elapsed during which time Dorothy had claimed the property as her own, paid the taxes thereon since 1950, and had made improvements to the property. Upon delivery to the plaintiff of the abstract of title it was apparent that her occupancy of the premises was no longer gratuitous, but rather her interest commenced to ripen from that point into a fee simple by adverse possession.

We are not persuaded that the alleged "confidential" nature of the relationship between plaintiff and J. V. Spear could preclude plaintiff from holding title adversely to J. V. Spear and his heirs, for in the cases previously cited (Parker v. Kelsey; Schafer v. Hauser; Miller v. Conley, supra) the adverse claimants shared either "confidential" or familial relationships with those against whom the adverse claims were being advanced.

The Superior Court was correct in entering judgment quieting title in the plaintiff, and that judgment is therefore affirmed.

UDALL, V. C. J., and BERNSTEIN, J., concur.