GLANTZ, APPELLANT, *v.* GABEL, RESPONDENT.

(No. 5,095.)

(Submitted January 8, 1923. Decided February 10, 1923.)

[212 Pac. 858.]

*Water Rights—Ditches— Title by Prescription—Easements— License—Presumptions—Injunction.*

Water Rights—Ditch Right Over Land of Another—Title by Prescription —Presumptions.

1. Where the claimant of a ditch right by prescription over the lands of another has shown an open, visible, continuous and unmolested use of the lands for the period sufficient to acquire title by adverse possession, his use will be presumed to have been adverse and under a claim of right and not by license, the burden of overcoming such presumption being upon the owner of the servient estate.

Same—Adverse User of Ditch—When "Continuous."

2. Use of a ditch right by the claimant whenever he needed water, without regard to the rights of others therein, uninterrupted by the acts of the owner of the land over which the ditch was constructed, was continuous, constant use throughout the year not having been necessary.

Same—Ditch Right—Easement—License—Intent of Grantor of Right.

3. Where the right to use a ditch rested upon an agreement between the claimant and the predecessor in interest of the defendants in the land over which it was constructed, the intent of the grantor in permitting the use is a matter of prime consideration in determining whether the right to its use was an easement or a mere license.

Evidence—Conclusions—Evidentiary Value.

4. Testimony based upon conclusions has no evidentiary value.

---

1. Burden of showing that the use upon which an easement by prescription is claimed was permissive, and not under claim of right, see notes in 8 L. R. A. (n. s.) 149; 44 L. R. A. (n. s.) 98.

Water Rights—Decree—Reciprocal Injunction.

5. Where both plaintiff and defendant in a water right suit are adjudged entitled to the use of a certain number of inches from a given stream, a decree of injunction should be reciprocal, enjoining each from interference with the right of the other.

*Appeal from District Court, Yellowstone County; Robert C. Strong, Judge.*

SUIT by John F. Glantz against Conrad Gabel. From a judgment for defendant, plaintiff appeals. Modified and affirmed.

*Messrs. Pierson & Smith,* for Appellant, submitted a brief; *Mr. Geo. W. Pierson* argued the cause orally.

This is a case where the rights of the dominant estate have been exercised, on the one hand, and recognized on the other, for many years by the various owners of both the dominant and servient estates. The declarations or assertions by the occupant are not essential to claim of title, which may be made by acts alone quite as effectually as by declaration. (*Rude* v. *Marshall,* 54 Mont. 27, 166 Pac. 298; *Morrison* v. *Linn,* 50 Mont. 396, 147 Pac. 166; *Fogarty* v. *Fogarty,* 129 Cal. 46, 61 Pac. 570; *Fletcher* v. *Fuller,* 120 U. S. 534, 30 L. Ed. 759, 7 Sup. Ct. Rep. 667 [see, also, Rose's U. S. Notes].) Possession and acts of ownership are the usual indications of the right of property, and these must be judged according to the nature of the subject matter. (*Conger* v. *Weaver,* 6 Cal. 548, 65 Am. Dec. 528; *Weber* v. *Clarke,* 74 Cal. 16, 15 Pac. 431.) After possession for the period of the statute, the law presumes title and the burden is cast upon the owner of the servient estate to disprove the right. (*Lockey* v. *City of Bozeman,* 42 Mont. 387, 113 Pac. 286; *Coventon* v. *Seufert,* 23 Or. 548, 32 Pac. 508; *Leckman* v. *Mills,* 46 Wash. 624, 91 Pac. 11; *Penny* v. *Central Coal & Coke Co.,* 138 Fed. 769, 71 C. C. A. 135; *Fletcher* v. *Fuller,* 120 U. S. 534, 30 L. Ed. 759, 7 Sup. Ct. Rep. 667 [see, also, Rose's U. S. Notes]; *United States* v. *Craves,* 159 U. S. 452, 40 L. Ed. 215, 16 Sup. Ct. Rep. 67.) There was no interruption during the period of limitations

and any subsequent interruption would not bar the right. (*McDonnell* v. *Huffine*, 44 Mont. 411, 120 Pac. 972; *Cox* v. *Clough*, 70 Cal. 347, 11 Pac. 732; *Cannon* v. *Stockmon*, 36 Cal. 539, 95 Am. Dec. 205; *Webber* v. *Clarke*, 74 Cal. 16, 15 Pac. 431.)

The acts of the various owners of the servient estate clearly disclose that they did not treat the ditch right of appellant and his predecessors in interest as a personal privilege, but expressly recognized the various conveyances and interests of the successors to such right. As to the respondent, his testimony is that he expressly invited the appellant to make expenditures upon the ditch in question and respondent cannot be heard to say in a court of equity appellant was not making such outlay on property of his own. (*Kirk* v. *Hamilton*, 102 U. S. 68, 26 L. Ed. 79 [see, also, Rose's U. S. Notes]; *Scott* v. *Toomey*, 67 N. W. 838, 8 S. D. 639.) One need not show continuity of possession by paper title, transfer of possession is sufficient to satisfy the statute. (*Illinois Steel Co.* v. *Jeka*, 119 Wis. 122, 95 N. W. 97; *McDonnell* v. *Huffine*, *supra*.) Adverse possession need not be based upon color of title. (*Morrison* v. *Linn*, 50 Mont. 396, 147 Pac. 66.)

The proofs submitted not only show delivery of possession of the ditch to succeeding predecessors in interest of the appellant, but actual conveyance of the ditch by the terms of the deeds. (*Beatty* v. *Murray Placer Min. Co.*, 15 Mont. 314, 39 Pac. 82.)

We submit under the evidence and authorities the ditch right in question was conveyed to B. Curtis, the predecessor in interest of appellant and that appellant now owns such right; that there is an entire want of evidence to support the contention of the defendant that the use was ever at any time a mere license; that after the time of user herein disclosed, defendant cannot be heard to say the right of appellant had its inception by license; that in any event there has not been an interruption of the use from the time the right was first exercised.

_ *Messrs. Johnston, Coleman & Johnston,* for Respondent, submitted a brief; *Mr. H. J. Coleman* argued the cause orally.

This court has very definitely and positively decided in favor of facts as here disclosed constituting a mere license, revocable at the pleasure of the licensor. (See *Great Falls W. W. Co. v. Great Northern Ry. Co.,* 21 Mont. 487, 54 Pac. 963; *Prentice v. McKay,* 38 Mont. 114, 98 Pac. 1081; *Archer v. Chicago, M. & St. P. Ry. Co.,* 41 Mont. 56, 137 Am. St. Rep. 692, 108 Pac. 571; *Lewis v. Patton,* 42 Mont. 387, 113 Pac. 745.) Under these decisions and the facts involved in this case, there can be no question that B. Curtis, the first predecessor of appellant was not the owner of any right of way which he could transfer to his successors.

While a permissive right cannot ripen into an easement by prescription, it is probably the law that a user permissive in its inception does not of itself prevent the acquisition of an easement by prescription and that when a licensee, or his successor in interest, renounces the authority under which he began the use, and claims it as his own right, and that fact is brought to the knowledge of the licensor, after which the licensee continues the use under such adverse claim exclusively, continuously and uninterruptedly for the full prescription period, the right may become absolute. Nevertheless, to transform a permissive use into an adverse one, there must be a distinct and positive assertion of a right hostile to the rights of the owner and such assertion must be brought to his attention. (*Brandon v. Timber Co.,* 26 Cal. App. 86, 146 Pac. 47; *Omodt v. Chicago, M. & St. P. Ry. Co.,* 106 Minn. 205, 118 N. W. 798; *Pitzman v. Boyce,* 111 Mo. 387, 19 S. W. 1104; *Smith v. Hope Min. Co.,* 18 Mont. 432, 45 Pac. 632; *Clarke v. Clarke,* 133 Cal. 667, 66 Pac. 10; *Flagg v. Phillips,* 201 Mass. 216, 87 N. E. 598; *Pastorino v. Detroit,* 182 Mich. 5, 148 N. W. 231; *City of Clatskanie v. McDonald,* 85 Or. 670, 167 Pac. 560; *Reese Howell Co. v. Brown,* 48 Utah, 142, 158 Pac. 684; *Shulenbarger v. Johnstone,* 64 Wash. 202, 116 Pac. 843.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

In this action plaintiff and defendant sought a decree fixing their appropriations to the use of the waters of Hogan Slough, a tributary of the Yellowstone River, and determining their rights in the ditch through which the appropriations were made, and respecting the right of way of the ditch across respondent's lands. Each claimed a prior appropriation. Plaintiff claimed to be the owner by prescription of an undivided one-half interest in the ditch from its headgate in the Hogan Slough to the dividing box, mentioned later, and all of the ditch from that point to his own land. Defendant denied plaintiff's claim to any interest in the ditch whatsoever; alleged that neither plaintiff nor his predecessors in interest ever acquired a right of way for the ditch across defendant's land by purchase, condemnation, prescription, or otherwise; alleged that plaintiff and his predecessors in interest had used the same only by permission of defendant and his predecessors in interest by way of license.

The court awarded plaintiff 110 inches of the waters of Hogan Slough as of date April 1, 1896, and defendant a like amount as of date March 6, 1892. It determined that the use of the ditch by plaintiff and his predecessors in interest was through a "mere license," which was revoked in 1920, and debarred plaintiff from using the ditch further. The appeal is from the judgment.

Martin Burns, who was the first predecessor in interest of defendant, settled upon what is now known as the Gable place probably before 1890. In 1892 he constructed the Burns ditch, by means of which the water in question was diverted. The ditch commenced at a dam in Hogan Slough, ran across the land of another, then entered the Gable land at its western boundary, and went well toward its easterly side.

B. Curtis, first predecessor of the plaintiff Glantz, settled upon lands which adjoined the Gable lands on the east as early as 1896. In April of that year he appropriated the waters of Hogan Slough awarded to appellant, by means of

the Burns ditch. Curtis extended the ditch from its end in the Gable field to his own land, and irrigated his crops with it that year. There has been and is no other means of irrigating the land. He and his successors in interest during each year thereafter used the water appropriated by him through the Burns ditch and the extension for irrigating the Glantz land, the court finding that at least 110 acres of the land have been reduced to cultivation and irrigated by that means.

Nobody knows what the arrangement was between Burns and Curtis as the result of which Curtis entered upon the Burns ditch, made his appropriation, and ever after used the same for irrigation. Curtis is dead, and Burns is presumed to be. It does appear that from the time Curtis extended the ditch he and Burns jointly kept in repair the dam and the ditch from the slough to the point where the Curtis extension began; from that point on Curtis maintained it. Indeed, it is beyond question that Curtis and his successors in interest, from April 1, 1896, until the spring of 1921, made an open, visible, continuous, and unmolested use of the ditch for the purpose of conveying the water appropriated by Curtis to the Glantz land. During all these years appellant and respondent and their respective predecessors in interest jointly repaired, maintained and used the dam, and at least that portion of the ditch between the dam and the dividing box. This box was placed in the ditch at a point about 200 feet west of the Gable land by Snyder, who immediately succeeded Curtis, pursuant to an arrangement with Babcock, to whom Burns sold his land. The occasion for this arose in the spring of 1902 through the following circumstance, according to Snyder: ''Babcock's men got careless and allowed the water to come down and flood me. I had Mr. Babcock come out to the ranch and he consented that if I would take care of the ditch and put in a dividing box at his west line, he would take his water through separate ditches along the side of the ditch, leaving the old ditch for me exclusively.'' The witness testified that he claimed ''a half interest in the ditch from the dam in the Hogan Slough to the Babcock

place, and all the ditch running through the Babcock place.'' No one interfered with him in his use of the ditch; his right of way for it and the use thereof across the Gable place was never disputed. Snyder also said: ''I purchased in the fall of 1901. Mr. Curtis used the ditch to get water to his land. He enlarged the ditch. Both B. Curtis and Martin Burns told me that Curtis had a perpetual right there.'' Defendant moved to strike out portions of this answer, which motion the court overruled, observing that it might do so later. Without discussing the reasons assigned by counsel, suffice it to say that the court's action in overruling the motion was correct.

John M. Walker was foreman for L. F. Babcock on the Gable place in 1904. Snyder was then living on the Glantz place. That year Snyder and his men assisted in building and repairing the dam in the slough. About 200 feet west of the Gable place the witness and Snyder built a dividing box. The old one had decayed and rotted away. Babcock furnished half of the lumber and Snyder half. The witness and Snyder worked together. Snyder carried the water across the Gable place through the main ditch to his place, and the water for the Gable place was used from the division box easterly and southerly in other ditches. In directing the witness as to his duties as foreman with respect to managing the Gable place, L. F. Babcock, then its owner, told Walker that Snyder had a half interest in the water and in the ditch leading from the slough down to the division box, and that Snyder owned the ditch from the division box to the Glantz place. That year the witness and Snyder also repaired the headgate and cleaned the ditch to the division box. From that point on Snyder did the work himself.

The witness Hugh P. Babcock gave testimony tending to show, in a slight degree, that Snyder and Linton, who succeeded Snyder, used the ditch by his, Babcock's permission. The great weight of the testimony is against his testimony on this point. While Linton was a witness for respondent, his testimony was to the effect that there was never any contro-

versy between Babcock and himself as to Linton's right in the ditch.

In the light of the foregoing facts, we arrive at the question whether the court came to the right conclusion in deciding that plaintiff did not have title to the ditch, or some interest therein, by prescription.

1. Where the claimant has shown an open, visible, continu-[1] ous and unmolested use of the land of another for the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right, and not by license of the owner. In order to overcome this presumption, thereby saving his title from the encumbrance of an easement, the burden is upon the owner to show that the use was permissive. This rule is sustained by the great weight of authority. (9 R. C. L., Easements, sec. 39; *Smith* v. *Pennington,* 122 Ky. 355, 8 L. R. A. (n. s.) 149, note, 92 S. W. 730; *Pavey* v. *Vance,* 56 Ohio St. 162, 46 N. E. 898; *Ricard* v. *Williams,* 7 Wheat. 59, 5 L. Ed. 398 [see, also, Rose's U. S. Notes]; *Williams* v. *Nelson,* 23 Pick. (Mass.) 141, 34 Am. Dec. 45; *Pierce* v. *Cloud,* 42 Pa. 102, 82 Am. Dec. 496; note to *Hollins* v. *Verney,* 10 Eng. R. C. 95; Washburn on Easements & Servitudes, 3d ed., 111.)

This is a rule of repose. As said by Mr. Justice Story, in *Richard* v. *Williams, supra:* "Presumptions of this nature are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions. They are founded upon the consideration, that the facts are such as could not, according to the ordinary course of human affairs, occur, unless there was a transmutation of title to, or an admission of an existing adverse title in, the party in possession." (*Worrall* v. *Rhoads,* 2 Whart. (Pa.) 427, 30 Am. Dec. 274.)

When the claimant's use has thus been open, visible, continuous, unmolested and under a claim of right, the corollary is that it has been adverse to the owner. (*Chollar-Potosi Min. Co.* v. *Kennedy,* 3 Nev. 361, 93 Am. Dec. 409.) In the instant case the use was not only open and visible to all the

world, but the owners of the servient estate at all times had actual knowledge of it. And not only was the use of the ditch by plaintiff and his predecessors in interest open, visible, continuous and unmolested for a period sufficient to satisfy the statute of limitations in this state, ten years, but it even exceeded the period required by the common law to establish a right by prescription, twenty years. True the use was only **[2, 3]** in irrigation season; yet, as observed by Mr. Justice Holloway in *Hays* v. *DeAtley,* 65 Mont. 558, 212 Pac. 296, it was continuous because "not interrupted by the acts of the owner of the servient estate or voluntary abandonment by the easement claimant. Continuous use does not necessarily imply constant use." If plaintiff and his predecessors used the ditch whenever needed, as they did, without regard to the rights of others, the requirements of the rule were met. In this case, as in that one, there is not any question that Curtis went into the use of the ditch by virtue of some sort of agreement with Burns, the owner of the land over which the ditch extended. Hence Burns' intention in according to Curtis the right to use the ditch is a matter of prime consideration. (*McDonnell* v. *Huffine,* 44 Mont. 411, 120 Pac. 792.)

In view of the testimony of Snyder, who said Burns told him Curtis had a perpetual right in the ditch, and of the supporting testimony of Walker, to the effect that Babcock, when owner of the land, said that Snyder, the successor in interest of Curtis, owned a half interest in the ditch, the decisions in the cases of *McDonnell* v. *Huffine* and *Hays* v. *DeAtley* are directly in point. But in the absence of the testimony of Snyder and Walker respecting the declarations of Burns and Babcock, still the evidence in this case, in view of the presumption above mentioned, practically uncontradicted in the record, and the admitted facts concerning the conduct of the parties for a period of nearly twenty-five years, greatly preponderates in favor of plaintiff.

Some reliance is placed by defendant upon the use of the word "consent" by the witness Snyder in talking of the management of the ditch by himself and Babcock. In the

light of the context of the testimony given by the witness, the word is not susceptible of the meaning which counsel seek to give it. It may, and in this instance, we think, did, mean "to agree; to be in harmony or accord; to be of the same mind; to accord; concur." (Webster's New International Dictionary.) The word was also used by Mrs. Curtis on cross-examination, but she was not present when any arrangements were made between her husband and Burns respecting the ditch. On this phase of the case her testimony was based upon her conclusions, which have no evidentiary value.

2. In view of what has been said, plaintiff and defendant are entitled to the use of 110 inches of the waters of Hogan Slough as of the dates determined by the trial court, with a right to convey these waters to their respective premises through the Burns ditch. Each of them is entitled to an undivided one-half interest in the Burns ditch from its head to the eastern boundary line of the Gable ranch, and from that point on the ditch is the exclusive property of the appellant.

While plaintiff claims to be the sole owner of the ditch from the division point to his own land, and there is some testimony supporting his contention in that regard, the record indicates without substantial contradiction that defendant has some land north of the ditch which he has irrigated by means of the Burns ditch, and from laterals diverting therefrom; it also indicates that defendant has irrigated some of his land lying south of the ditch by tapping it on his premises at different points. This method of irrigating his land lying both north and south of the ditch has been going on for many years past, considerably in excess of ten. The record does not sustain plaintiff's contention that he has been in such exclusive control of the ditch from the division box to the easterly boundary line of the Gable place as to warrant a finding that he is entitled to the entire ditch by prescription.

3. Plaintiff complains that, while the court in its decree enjoined him from interfering in any manner with de-

fendant's use and enjoyment of the waters of Hogan Slough, a like injunction was not entered in favor of plaintiff as against defendant. The injunction should be made reciprocal in that respect.

For the foregoing reasons, the judgment is reversed, and the cause is remanded, with directions to the district court of Yellowstone county to modify the decree to conform to the views herein expressed, and when so modified it shall stand affirmed. Plaintiff shall recover half his costs in this appeal.

*Modified and affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.