424 P.2d 165

Daniel H. HIGGINBOTHAM, aka D. H. Higginbotham, and Naomi W. Higginbotham, his wife, Appellants,

v.

Ethel KUEHN, Appellee.

No. 8344.

Supreme Court of Arizona.

In Banc.

March 1, 1967.

Christy, Kleinman, Peterson, Hoyt & Fuller, Phoenix, for appellants.

Greig Scott and Jack C. Cavness, Phoenix, for appellee.

STRUCKMEYER, Justice.

This quiet title action was instituted by Ethel Kuehn, a widow, against Daniel H. and Naomi W. Higginbotham, his wife, seeking title by adverse possession to a one and one-half foot strip of property. The trial court entered judgment in favor of Kuehn and the Higginbothams appealed.

■ Since the only serious questions concern the sufficiency of the evidence, the facts will be stated and taken in a light most favorable to support the judgment. Chadwick v. Winn, 101 Ariz. 533, 421 P.2d 890.

Prior to 1943, the property of both appellants and appellee was owned by Tom Caldwell who, in that year, by a metes and bounds description sold the parcel now owned by appellants to Andy Womack. Womack then erected a wooden fence about one and one-half feet inside the east line of his property. In 1945, appellee purchased her property. It adjoined the Womack property on the east. At the time she purchased, she was informed by Caldwell that the wooden fence was the property line.

The same year appellee built a house on her property and, among other things, built a rail fence across the north (front) which tied into Womack's fence on the west side of appellee's property. Appellee also planted a privet hedge on the northwest fifty feet of her property set back from the fence approximately on the true line and this hedge grew and spread out across the disputed foot and one-half. Appellee also built a clothesline south of the privet hedge which overhung the true property line. Thereafter, appellee clipped the privet hedge and mowed the grass to the Womack fence south of the hedge line. Appellee later granted an easement for power poles to a public utility. The public utility seemingly took the fence line as the property line and placed the poles within the one and one-half foot disputed strip rather than on appellee's property.

In 1950, appellants acquired their title from Womack's successor and, within six months to a year, tore down the Womack fence and, after a short interval of time, erected a hogwire fence at approximately the same location. In 1961, the Higginbothams, in preparation for further construction on their property, attempted to utilize the one and one-half foot in dispute. This brought about the present lawsuit.

A.R.S. § 12–521, subsec. A, ¶1 provides:

"'Adverse possession' means an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

■ Appellants urge that appellee performed no act constituting actual and visible appropriation of the strip of land in question. The recited evidence plainly refutes this contention. The acts which may constitute possession are necessarily varied and, of course, depend upon the circumstances of the case. Spillsbury v. School District No. 19, 37 Ariz. 43, 288 P. 1027. From 1945 to the time of this dispute in 1961, for a period of sixteen years, appellee occupied and used the strip as part of her yard. Clearly, appellee's appropriation was actual and visible.

■■ Her property line was identified to her at the time of purchase as being the Womack fence and she testified that she intended to claim to the fence as her land. It was obviously adverse. A claim of right is nothing more than the intention of the party in possession to appropriate and use the land as his own to the exclusion of others irrespective of any semblance or shadow of actual title or right. Gunther & Shirley Co. v. Presbytery of Los Angeles,

85 Ariz. 56, 331 P.2d 257. That appellee had or could have had knowledge of the exact property line from the description by metes and bounds in her deed is immaterial. It is the actual and visible appropriation commenced and continued under a claim of right which establishes adverse possession.

A.R.S. § 12–521, subsec. A, ¶2 provides:

"'Peaceable possession' means possession which is continuous, and not interrupted by an adverse action to recover the estate."

Appellants contend that appellee's possession was interrupted. They do not assert that an adverse action was brought during the statutory period to recover the strip in question but urge that her possession was not continuous. Possession is peaceful within the meaning of § 12–521, subsec. A, ¶2, supra, unless it is physically interrupted. Gusheroski v. Lewis, 64 Ariz. 192, 167 P.2d 390. Appellants submit that the tearing down of the Womack fence in 1950 interrupted appellee's posssssion. But no explanation of why this in and of itself constitutes an interruption of appellee's possession is given.

"To constitute an interruption of an occupant's adverse possession, an entry by the owner must be made with the intention of taking possession. Such an entry by the owner, in order to defeat another's adverse possession, must clearly indicate to the occupant that his possession is invalid and his right challenged. It must be open and notorious and bear on its face an unequivocal intention to take possession. It cannot be accidental, casual, secret, or permissive. [Citations.]" Kirby Lumber Corporation v. Smith, Tex.Civ.App., 305 S.W.2d 829, 830.

There is not the slightest evidence that appellants tore down the Womack fence and thereafter erected the hogwire fence with the intention of retaking possession of the one and one-half foot strip.

The statement in Trevillian v. Rais, 40 Ariz. 42, 9 P.2d 402, controls the disposition of this appeal.

"'Where a person, acting under a mistake as to the true boundary line between his land and that of another, takes possession of land of another believing it to be his own, up to a mistaken line, claims title to it and so holds, the holding is adverse and, if continued for the requisite period, will give title by adverse possession. And the fact that on taking possession he had no intention of taking what did not belong to him, or claimed that he had no desire or intention to take any land belonging to the adjoining owner, or that he would have surrendered possession if he had known that the land in dispute was not within the calls of his deed, or that the owner of the record title was ignorant of the location of the true boundary line or of the fact that the land was his, or supposed that the adverse occupant intended to claim only what he actually owned, or the fact that both owners were mistaken as to the true boundary line, does not affect the operation of the rule. * * * In all cases the intention and not the mistake is the test by which the character of the possession is determined, it being *prima facie* sufficient that actual, visible, and exclusive possession is taken under a claim of right without reference to the fact that the possession was based on mistake.'"

40 Ariz. 42 at pp. 45, 46, 9 P.2d 402 at p. 403. (Emphasis in original.)

Judgment affirmed.

BERNSTEIN, C. J., McFARLAND, V. C. J., and UDALL and LOCKWOOD, JJ., concur.