859 P.2d 755

**George R. INCH and Joan Inch, husband and wife, Plaintiffs/Appellees,**

**v.**

**Loren E. McPHERSON and Katie McPherson, husband and wife, Defendants/Appellants.**

**No. 2 CA–CV 91–0217.**

Court of Appeals of Arizona, Division 2, Department B.

Dec. 31, 1992.

As Corrected Feb. 10, 1993.

Reconsideration Denied Feb. 11, 1993.

Review Denied Oct. 5, 1993.

Ettinger & Bevans, P.C. by Jack A. Ettinger, Tucson, for plaintiffs/appellees.

Kimble, Gothreau & Nelson, P.C. by David F. Toone, Tucson, for defendants/appellants.

## OPINION

HATHAWAY, Judge.

This is an appeal from the trial court's ruling on appellants Loren and Catherine McPhersons' (McPhersons) counter-claim to

quiet title for a strip of property three feet wide and sixty-two feet long on the boundary between the McPhersons' and appellees George and Joan Inchs' (Inchs), residences. We affirm the judgment awarding a prescriptive easement to Inchs and vacate the order which would have allowed Inches to build a block wall on the easement.

## FACTS AND PROCEDURAL HISTORY

In 1954, Mrs. McPherson's parents, Victor and Ina Cone (Cones), purchased the house the McPhersons live in now. At that time, no one lived where the Inchs presently reside. The Cones planted a hedge about 45 or 50 feet long approximately three feet inside the west side of their property which extended from the wall dividing the front and back yards toward the curb. Inchs moved into their house in 1963 and believed their property extended to the center of the hedge roots. Mr. Cone trimmed the hedge until he died, and Mr. McPherson trimmed it since 1976, after he moved in. Inchs enclosed their garage for additional living space, laid down gravel for a driveway between their house and the hedge, and habitually parked their cars on their side of the hedge before it was taken down. In 1984, McPhersons determined the true extent of their platted property by survey. In 1985, there was a dispute about the property line on another part of the parties' lands, a claim was filed, and the claim was settled without trial. In 1987, McPhersons "desertized" their yard, eliminated the hedge, and the dispute about parking arose.

In 1989, while Inchs were out of town, McPhersons installed a chain-link fence on their side of the platted boundary, but within the area Inchs had used for parking. Inchs filed an action for trespass and slander against McPhersons. McPhersons filed a counter-claim to quiet title. In October 1990, a jury verdict was rendered in favor of McPhersons on the slander claim. The parties stipulated the court could decide the trespass claim. In March 1991, the court awarded the Inchs "an easement, by right of adverse possession, of the westerly three feet (3′) of the existing platted prop-

erty ..." In June 1991, the court ordered that Inchs were "allowed to build a block wall provided it does not interfere with the waterline ... because of the potential for flooding due to the disparate levels of the two properties and interference of each of the parties involved with the easement." In July 1991, the court entered its final judgment on slander in favor of the McPhersons and found no damages awardable for trespass. A timely notice of appeal was filed.

## ISSUES ON APPEAL

McPhersons contend on appeal that: (1) there was insufficient proof to grant a prescriptive easement; (2) there was insufficient proof to establish the easement boundary line; (3) the trial court erred by allowing Inchs to build a block wall on the easement; and, (4) the prescriptive easement unconstitutionally deprived McPhersons of their property.

## I.

## EVIDENCE SUPPORTING PRESCRIPTIVE EASEMENT

McPhersons argue that Inchs did not offer substantial evidence at trial which could have allowed the court to find that the elements of adverse possession for a prescriptive easement right were established. The party claiming the right to use another's land carries the burden of proof. *LaRue v. Kosich*, 66 Ariz. 299, 187 P.2d 642 (1947).

The proof necessary to establish a prescriptive easement to use land is not the same as that to establish a claim of title by adverse possession. *Etz v. Mamerow*, 72 Ariz. 228, 232, 233 P.2d 442, 446 (1951). "[I]t is only the use to which the premises are put which must be shown to be adverse, open and notorious. To the extent that the use is established, it, of course, is hostile to the title of the servient estate." Id. at 233, 233 P.2d at 447. Therefore, although the plaintiffs in this case must prove all the elements essential to title by prescription, their

burden of proof must be measured in terms of the right to use they [sic] claim, i.e. [sic] a very limited periodic use.

\*   \*   \*   \*   \*   \*

Arizona case law does not provide a clear delineation as to the requirements of each element of adverse possession ... (footnote omitted)

*United States on Behalf of Zuni Tribe of New Mexico v. Platt*, 730 F.Supp. 318, 321 (D.Ariz.1990). To prove adverse possession for an easement Inchs had to show by clear and convincing evidence that its use was "actual, open and notorious, hostile, under a claim of right, continuous for the statutory period [here, 10 years], and exclusive." *Rorebeck v. Criste*, 1 Ariz.App. 1, 4, 398 P.2d 678, 681 (1965).

The standard of review on this issue follows:

> Since the weight to be given to evidence is peculiarly within the province of the trial court, it is the trial court and not this court that draws the distinction between evidence which is clear and convincing and evidence which merely preponderates. *Webber v. Smith*, 129 Ariz. 495, 498, 632 P.2d 998, 1001 (App.1981). This court must review the evidence in a manner most favorable to sustaining the judgment and if there is evidence to support the judgment, it will not be disturbed.

*Yano v. Yano*, 144 Ariz. 382, 384, 697 P.2d 1132, 1134 (App.1985). "This court will *not* weigh evidence to determine its preponderance on a disputed question of fact; our only concern is whether facts have been established which might reasonably support the trial court's judgment. *Rightmire v. Sweat*, 83 Ariz. 2, 5, 315 P.2d 659, 662 (1957)." *Whittemore v. Amator*, 148 Ariz. 173, 175, 713 P.2d 1231, 1233 (1986).

Cones and McPhersons maintained the hedge between their property and where Inchs now live for 33 years, from 1954 to 1987. There was testimony from Mr. Royce Connor that Inchs laid down gravel for a driveway between the east side of their house and the McPhersons hedge, and regularly parked their car on their side of the hedge since 1963 until McPhersons removed it. From this evidence, the trial court could have found that use of the three-foot strip of land was actual and visible, open and notorious, and continuous for more than twice the required statutory period.

■ McPhersons contend that there was no "conspicuous use" of the land, and no evidence that Inchs, or their cars or passengers, actually used the disputed land to gain a prescriptive easement right. We believe the trial court could have concluded the Inchs used the land by laying gravel and parking on it. The court could have concluded that the gravel area used by Inchs as a driveway gave notice to the whole world that Inchs had taken that area of land for their own use. The use continued conspicuously and continuously, not intermittently.

■ In Arizona, a person who makes use of land mistakenly believing it to be his own meets the hostility element to procure a prescriptive easement. *Higginbotham v. Kuehn*, 102 Ariz. 37, 38, 424 P.2d 165, 166 (1967); *Trevillian v. Rais*, 40 Ariz. 42, 43, 9 P.2d 402, 403 (1932). In *Higginbotham*, quoting from *Trevillian*, our supreme court stated:

> 'Where a person, acting under a mistake as to the true boundary line between his land and that of another, takes possession of land of another believing it to be his own, up to a mistaken line, claims [a prescriptive right] to it and so holds, the holding is adverse and, if continued for the requisite period, will give [a prescriptive easement] by adverse possession. And the fact that on taking possession he had no intention of taking what did not belong to him ... does not affect the operation of the rule.

\*   \*   \*   \*   \*   \*

In all cases the intention and not the mistake is the test by which the character of the possession is determined, it being *prima facie* sufficient that actual,

visible, and exclusive possession ... was based on mistake.'

102 Ariz. at 39, 424 P.2d at 167.

██ Inchs testified that when they bought their property, they believed the land extended to the middle of the hedge roots and acted accordingly, laying out gravel and parking their cars on the side of their house. After a prima facie case of prescription is established, a legal presumption exists that there is a claim of right and not permissive use. *Gusheroski v. Lewis,* 64 Ariz. 192, 198, 167 P.2d 390, 394 (1946). There was sufficient evidence to support the trial court's conclusion that the use was hostile and to bolster the claim of right of presumption.

We conclude that there was sufficient evidence at trial from which the court could have found that a prescriptive easement right by adverse usage had been established.

## II.

### EVIDENCE SUPPORTING EASEMENT BOUNDARY LINE

██ McPhersons assert the trial court erred by "arbitrarily," without sufficient evidence, choosing a new boundary line three feet within the eastern side of the platted boundary between the parties' residences. In reviewing the trial court's judgment, we view the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party. If there is any evidence to support the judgment, we are required to affirm. *Paul Schoonover, Inc. v. Ram Const., Inc.,* 129 Ariz. 204, 205, 630 P.2d 27, 28 (1981).

The Inchs testified that they believed the property line was the center of the hedge roots. Inchs' surveyor, Harold Miller, drew the survey map showing where the boundaries came together. Photographs were presented at trial indicating the location where the gravel was laid down, where the hedge was before it was removed, where Inchs' cars were parked, and where the chain-link fence was installed after the hedge was taken down. There was suffi-

cient evidence to enable the trial court to reach its conclusions regarding the new boundary and we therefore affirm.

## III.

### BUILDING BLOCK WALL ON PRESCRIPTIVE EASEMENT

██ McPhersons argue that the trial court erred when, after it granted Inchs an easement in the west three feet of their property, it then ordered Inchs could construct a block wall on the easement. McPhersons raised this issue at trial and objected to the form of judgment. We consider this purely legal question de novo. *Arnold v. Dept. of Health Services,* 160 Ariz. 593, 775 P.2d 521 (1989).

Inchs' counter-argument is that they obtained legal title to the three-foot strip of disputed land when the trial court ruled they had established the elements of adverse possession necessary to acquire a prescriptive right. However, Inchs did not seek legal title to the three-foot strip at trial, nor do they cross-appeal seeking such relief.

An easement was the remedy granted at trial. "The scope of a prescriptive easement is determined by the use through which it was acquired. *Stamatis v. Johnson,* 71 Ariz. 134, 224 P.2d 201 (1950). Those using the land of another for the prescriptive period may acquire the right to continue such use, but do not acquire the right to make other uses of it. Id." 730 F.Supp. at 324. The trial court awarded Inchs a prescriptive easement to continue using the disputed land to park their cars beside the east side of their house. We hold that as a matter of law, Inchs may not exceed the uses through which they acquired the easement, and we vacate that portion of the judgment allowing them "to build a block wall ... because of ... interference of each of the parties involved with the easement."

## IV.

### UNCONSTITUTIONAL DEPRIVATION OF PROPERTY

██ McPhersons maintain that Article II, § 4 of the Arizona Constitution

which assures them they will not be deprived of "property without due process of law," was violated when the trial court awarded Inchs the easement. They cite a Florida statute, Fla.Stat. § 95.16 (1991), and a dissent in a Florida supreme court case, *Seddon v. Harpster*, 403 So.2d 409, 413 (Fla.1981), as authority for their argument. We review legal issues for denial of a directed verdict de novo. *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990). The trial court denied McPhersons' motion for a directed verdict on this issue.

The Florida statute differs significantly from Arizona's analogous provision, A.R.S. § 12–523. Unlike the Florida statute (Fla. Stat. § 95.16), A.R.S. § 12–523 does not require that an adverse possession claim be recorded in public records. Though the dissent in *Seddon v. Harpster, supra,* is an interesting analysis, we do not find the Florida dissent persuasive enough to alter 50 years of Arizona case law. There was no state action in this case as, for example, there might have been in an eminent domain case brought by the state's taking of private property. There is, therefore, no basis for the constitutional claim and we affirm the trial court's denial of a directed verdict on this issue.

## V.

### ATTORNEYS' FEES AND COSTS

■ Inchs request their costs and reasonable attorneys' fees for what they characterize as a frivolous appeal, one without merit and "unsupported by any reasonable legal theory." Since we vacated the trial court's order to allow Inchs to build a block wall on the easement, we cannot say McPhersons' appeal was frivolous and deny Inchs' request for costs and reasonable attorneys' fees.

## VI.

### CONCLUSION

We affirm the judgment awarding a prescriptive easement to Inchs and vacate the June 1991 order permitting Inchs to build a block wall on the easement.

DRUKE, P.J., and FERNANDEZ, J., concur.