IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

APR 23 2008

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| PAT SPAULDING, in her capacity as a Trust Officer of STEWART TITLE & TRUST OF TUCSON, an Arizona corporation, as Trustee under Stewart Title Trust Number 3610, | ) ) ) ) ) ) | 2 CA-CV 2007-0108 DEPARTMENT A |
| | ) | O P I N I O N |
| Plaintiff/Appellee, | ) ) | |
| v. | ) ) | |
| MICHAEL A. POULIOT, an unmarried man, | ) ) ) | |
| Defendant/Appellant. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20062051

Honorable John F. Kelly, Judge

REVERSED IN PART; VACATED AND
REMANDED IN PART WITH INSTRUCTIONS

Aboud & Aboud, P.C.
  By Michael J. Aboud                                                    Tucson
                                              Attorneys for Plaintiff/Appellee

Butler & Associates, P.L.C.
  By Michael J. Butler and Michael A. Fleishman                         Tucson
                                          Attorneys for Defendant/Appellant

BRAMMER, Judge.

¶1        This is a dispute between two property owners regarding the use of a road and the ownership of a small, adjacent parcel of land. Appellant, Michael Pouliot, appeals the trial court's grant of injunctive relief and award of attorney fees and costs in favor of appellee, Pat Spaulding, acting in her capacity as trustee of Stewart Title Trust No. 3610 (the Trust), and its dismissal of his counterclaim. Pouliot argues the trial court erred in dismissing his counterclaim and granting the Trust's requested injunction, based on the court's legal determination that the use and possession of land, by a party claiming rights to it by prescriptive easement or adverse possession, are presumed to be permissive. Pouliot further argues the trial court erred in awarding the Trust its costs and attorney fees.

**Factual and Procedural Background**

¶2        The following facts are undisputed. Pouliot owns and resides on a parcel of land adjacent to a large vacant lot in Pima County. Pouliot purchased his parcel in 1996 from Beatrice Redmond, who had purchased it in 1968. Since 1968, Redmond had used an unpaved road over the neighboring vacant lot to access a carport on her property. During that time, she regularly had the road graded. She had also maintained a small parcel of land between the road and her home (the "adjoining parcel"), upon which she kept and maintained a propane tank that provided fuel to heat her home. Shortly after Pouliot bought Redmond's property in 1996, he built a large garage to replace the carport. He later paved the part of the road he used to access his garage and placed decorative rock on the adjoining parcel.

2

Throughout his ownership, he continued to use and grade the road and to use and maintain the adjoining parcel.

¶3        In 1971, John and Emily Aboud purchased the vacant lot next to the Redmond/Pouliot property and visited it periodically over the following three decades. In 2003, the Abouds' children acquired the lot and placed it in the Trust for their benefit. In 2005, in accordance with A.R.S. § 12-1103(B), the Trust requested that Pouliot execute a quitclaim deed to the portions of the Trust's property he had been using. Pouliot refused to do so.

¶4        The Trust sued Pouliot, alleging he was trespassing on its property. It asked the court to bar Pouliot from further use of the property and to order him to remove the paving from the road. Pouliot answered, claiming he had a prescriptive easement over the road and had acquired title to the adjoining parcel by adverse possession. Pouliot then served and asked the Trust to execute quitclaim deeds to the road and adjoining parcel.[1] After the Trust refused, Pouliot amended his answer to add a counterclaim, asking the court to rule that he had acquired title to the adjoining parcel by adverse possession and had acquired a prescriptive easement over the road. He also requested his attorney fees and costs.

---

[1]Although the deeds are not included in the record on appeal, Pouliot alleged in his counterclaim and in the statement of facts accompanying his motion for summary judgment that he had served two deeds on the Trust, claiming a prescriptive easement over the road and title by adverse possession to the adjoining parcel. In its responses to Pouliot's counterclaim and motion for summary judgment, the Trust admitted it had received those deeds.

¶5        Before trial, Pouliot moved for summary judgment. Despite the Trust's failure to deny that Pouliot and Redmond had used the road and the adjoining parcel openly, visibly, continuously, and without interference for at least ten years, the trial court denied Pouliot's motion, stating that unspecified questions of material fact remained.

¶6        After a one-day bench trial, the trial court entered judgment in favor of the Trust. It found that, although Pouliot and Redmond had used the road "openly and continuously since 1968" without having received express permission to do so,[2] their use was presumed to be permissive under applicable case law and Pouliot had failed to overcome that presumption as to either the road or the adjoining parcel. Granting the Trust's request, the court ordered Pouliot to remove the paving, enjoined his further use of Trust property, and awarded the Trust its attorney fees and costs. This appeal followed.

**Discussion**

Prescriptive easement over road

¶7        Pouliot first argues the trial court erred in determining that, under applicable supreme court precedent, the use of land over which a prescriptive easement is claimed is presumed to have been with the permission of the title-holder. Relying on *LaRue v. Kosich*, 66 Ariz. 299, 304-05, 187 P.2d 642, 645-46 (1947), the trial court ruled that Pouliot "had the burden of proving that the use was not with the implied permission of [the owner]." The court recognized, however, that an earlier supreme court case, *Gusheroski v. Lewis*, 64 Ariz.

---

[2]The trial court made no express findings regarding the adjoining parcel.

4

192, 167 P.2d 390 (1946), had adopted the opposite presumption. But, because *LaRue* was decided after *Gusheroski* and "has never been overruled," the court applied the presumption it believed *LaRue* announced. It then concluded Pouliot had "failed to meet his burden of proof that his and his predecessor's use of the road [was] under a claim of right and hostile to the owner."

**¶8** Pouliot contends the trial court erroneously interpreted *LaRue*. He asserts *LaRue* "was fully on board with the *Gusheroski* holding," despite the *LaRue* court's discussion of the opposite presumption. Pouliot further contends the presumption the trial court applied does not "accurately reflect[] the current state of the law concerning prescriptive easements." On appeal, we review de novo questions of law, but we will not disturb the trial court's findings of fact unless they are clearly erroneous. *See Sabino Town & Country Estates Ass'n. v. Carr*, 186 Ariz. 146, 149, 920 P.2d 26, 29 (App. 1996). We will affirm the trial court's judgment if there is any reasonable evidence supporting it. *See id.; Inch v. McPherson*, 176 Ariz.132, 135, 859 P.2d 755, 758 (App. 1992).

**¶9** As the trial court noted, our supreme court held in *Gusheroski* that:

> [w]here the claimant has shown an open, visible, continuous, and unmolested use of the land of another for the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right, and not by license of the owner. In order to overcome this presumption, thereby saving his title from the encumbrance of an easement, the burden is upon the owner to show that the use was permissive.

5

*Gusheroski*, 64 Ariz. at 198, 167 P.2d at 393, *quoting Glantz v. Gabel*, 212 P. 858, 860 (Mont. 1923). One year later, while discussing *Clarke v. Clarke*, 66 P.2d 10, 11 (Cal. 1901), a California decision that long preceded *Gusheroski*, the *LaRue* court did observe that, under the facts of *Clarke*, "[t]he law . . . presume[d] . . . that the use was by permission." But the court nonetheless clearly confirmed in *LaRue* that it agreed with the presumption adopted in *Gusheroski* "in its entirety," although apparently concluding the presumption had been overcome in that particular case. *LaRue*, 66 Ariz. at 304, 306, 187 P.2d at 645, 647.

¶10 In *Harambasic v. Owens*, 186 Ariz. 159, 920 P.2d 39 (App. 1996), Division One of this court acknowledged the apparent conflict in *LaRue* that confused the trial court here. The court in *Harambasic* recognized the presumption, adopted by *Gusheroski* and subsequently followed by our courts, that a "'use will be presumed to be under a claim of right, and not by license of the owner,'" once "'the claimant has shown an open, visible, continuous, and unmolested use of the land'" for the statutory period. *Harambasic*, 186 Ariz. at 160-61, 920 P.2d at 40-41, *quoting Glantz*, 212 P. at 860; *see Gusheroski*, 64 Ariz. at 198, 167 P.2d at 393; *see also Inch*, 176 Ariz. at 136, 859 P.2d at 759 (recognizing *Gusheroski* presumption); *Brown v. Ware*, 129 Ariz. 249, 251, 630 P.2d 545, 547 (App. 1981) (same); *see generally* Restatement (Third) of Property: Servitudes § 2.16 cmt. (g) (2000) ("The majority of American states apply a presumption that an unexplained, open or notorious use of land, continued for the prescriptive period, is adverse."). We agree with the *Harambasic* court that the presumption first adopted in *Gusheroski* correctly represents the law in our

6

state.[3] The Trust did not contest here or below that Redmond's and Pouliot's use of the road over its property was "open, visible, continuous, and unmolested" for the statutory period. Therefore, the trial court erred by not following *Gusheroski*.

¶11 But the Trust suggests this presumption is inconsistent with our supreme court's decision in *England v. Ally Ong Hing*, 105 Ariz. 65, 72, 459 P.2d 498, 505 (1969), in which the court stated that, "[u]nless notice of [the] use, hostile to the owner, is clearly brought home to the true owner, such use will be deemed permissive." The court observed that notice could be achieved either if the owner had actual knowledge of the hostile use or if the adverse nature of the use was "'so plainly apparent from [the claimant's] acts that knowledge should be imputed to [the owner].'" *Id.*, *quoting Hester v. Sawyers*, 71 P.2d 646, 651 (N.M. 1937). We need not decide here, however, whether the rule declared in *England* and cited by the Trust would in fact be inconsistent with the *Gusheroski* presumption, because the rule's application is limited to prescriptive claims over large, unenclosed, rural parcels of land.

¶12 In *England*, the claimant asserted, inter alia, that he had acquired a prescriptive easement to drive his cattle over another's ranch land. *Id.* at 71-72, 459 P.2d at 504-05. As the court noted, "In [Arizona], it is not uncommon for cattle to range at will across the open

---

[3]Indeed, to the extent *Clarke* was ever part of our jurisprudence, given its status as California law, *Clarke* is no longer the law in California, which now applies a presumption akin to that adopted in *Gusheroski*. *See Harambasic*, 186 Ariz. at 161, 920 P.2d at 41; *see also Warsaw v. Chicago Metallic Ceilings, Inc.*, 676 P.2d 584, 588 (Cal. 1984); *MacDonald Props., Inc. v. Bel-Air Country Club*, 140 Cal. Rptr. 367, 373 (Cal. Ct. App. 1977).

ranch lands. An owner of [such land] over which cattle grazed would certainly not be expected to surmise that the rancher who owned these cattle was asserting any claim of right to his land." *Id.* at 69, 459 P.2d at 502. When adopting the rule on which the Trust relies, the *England* court reasoned the rule was appropriate "'where large bodies of privately owned land are open and unenclosed, [because] it is a matter of common knowledge that the owners do not object to persons passing over them for their accommodation and convenience.'" *Id.* at 72, 459 P.2d at 505, *quoting Hester*, 71 P.2d at 651. Indeed, our courts have recognized that *England* represents "the law in Arizona regarding the grazing of [livestock] on unenclosed land," *Combs v. DuBois*, 135 Ariz. 465, 468, 662 P.2d 140, 143 (App. 1982), but they have never applied *England* to prescriptive easement claims outside the context of large, open, rural properties. This is consistent with the Restatement (Third) of Property: Servitudes § 2.16 comment (g), which notes that "[e]vidence that the claimed servient estate was wild, unenclosed, vacant land overcomes the presumption of prescriptive use . . . creating a presumption that the use was permissive." The Trust did not assert here or below that its land is of the type described in *England*, and, although the Trust's property is unenclosed, the record suggests it is neither large nor rural but simply a vacant parcel in an urban, residential area.

¶13         Nonetheless, the Trust asserts that, because the party claiming a prescriptive easement bears the burden of proving all the elements necessary to establish it, *see Inch*, 176 Ariz. at 134, 859 P.2d at 757, and because a use that begins with permission cannot "ripen[]"

8

into a prescriptive easement, *see Etz v. Mamerow*, 72 Ariz. 228, 232, 233 P.2d 442, 445 (1951), Redmond's and Pouliot's use of the road must therefore presumptively be permissive. On the facts before us, we must disagree.

¶14 A party claiming an easement by prescription "'must establish that the land in question has actually and visibly been used for ten years, that the use began and continued under a claim of right, and [that] the use was hostile to the title of the true owner.'" *Paxson v. Glovitz*, 203 Ariz. 63, ¶ 22, 50 P.3d 420, 424 (App. 2002), *quoting Harambasic*, 186 Ariz. at 160, 920 P.2d at 40 (alteration in *Paxson*); *see Inch*, 176 Ariz. at 136, 859 P.2d at 759; A.R.S. §§ 12-521, 12-526. As the Trust correctly notes, the "'mere use of [another's property] for the required time is not [alone] sufficient to give rise to the presumption of a grant.'" *Etz*, 72 Ariz. at 232, 233 P.2d at 445, *quoting* 17 Am. Jur. *Easements* § 71. But, once the party claiming the easement has shown that his or her use during the statutory period was "'open, visible, continuous, and unmolested,'" Arizona law presumes that the use was under a claim of right and not permissive. *Gusheroski*, 64 Ariz. at 198, 167 P.2d at 393, *quoting Glantz*, 212 P. at 860. The burden then shifts to the owner of the property to show that the use was indeed permissive. *Id*.

¶15 Permission can be either express or implied, and, if a use is shown to have begun with the owner's permission, any subsequent use is presumed to have remained permissive. *See LaRue*, 66 Ariz. at 305, 187 P.2d at 646. That is, a use that begins permissively cannot "'ripen into a prescriptive right'" by the mere passage of time. *Etz*, 72

Ariz. at 232, 233 P.2d at 445, *quoting LaRue*, 66 Ariz. at 305, 187 P.2d at 646.

Consequently, in order to overcome the presumption of continued permissive use, the party

claiming the easement must show that, despite the initial permissive nature of the use, his or

her later actions indicated to the owner that the use had become hostile and under a claim of

right. *See LaRue*, 66 Ariz. at 306, 187 P.2d at 646; *cf. Herzog v. Boykin*, 148 Ariz. 131, 133,

713 P.2d 332, 334 (App. 1985); *Gospel Echos Chapel, Inc. v. Wadsworth*, 19 Ariz. App. 382,

384, 507 P.2d 994, 996 (1973).

¶16        We now consider whether, despite the trial court's failure to utilize the

presumption *Gusheroski* announced, the facts nonetheless support its judgment in favor of

the Trust. *See Sabino Town & Country*, 186 Ariz. at 149, 920 P.2d at 29; *Inch*, 176 Ariz. at

135, 859 P.2d at 758. The court found Redmond and Pouliot had used the road "openly and

continuously since 1968." This finding is supported by the evidence presented at trial and

is undisputed by the Trust, which conceded below that Redmond and Pouliot had used the

road in an open, visible, continuous, and unchallenged manner for the requisite statutory

period. Because Pouliot presented a prima facie case for an easement by prescription, his and

Redmond's use of the road was presumed to be under a claim of right and not with

permission. Accordingly, the burden shifted to the Trust to show that the use was, in fact,

with express or implied permission. *See Gusheroski*, 64 Ariz. at 198, 167 P.2d at 393.

¶17        The Trust contends that "Redmond's use clearly commenced and remained

permissive." The trial court, however, found that Redmond had never received express

10

permission to use the road. Indeed, the Trust presented no evidence that it, or the Abouds before it, had expressly permitted Redmond's use of the road, and Redmond testified that she had never received permission from anyone but had "just used the road" and "never talked about it" with any of its owners.

¶18 Relying on *Herzog*, the Trust counters that the "history of the Abouds' ownership is replete with indicia of implied permission." In *Herzog*, the claimant asserted he had acquired title by adverse possession to a neighboring vacant lot where he parked his vehicles. 148 Ariz. at 132-33, 713 P.2d 333-34. We found that the claimant's "use was not adverse but was with the owner's implied permission" because he had had conversations with the property owner about his use of the lot and had, upon the owner's request, "mov[ed] his vehicles without protest when his use interfered with the owner's use." *Id.* at 133, 713 P.2d at 334.

¶19 The Trust contends evidence that John Aboud had given other residents in the area express permission to use the road "strongly suggests" that Redmond, too, had at least implied permission to use the road. But, unlike the claimant in *Herzog*, Redmond testified she "[n]ever ha[d] conversations with anybody . . . the entire time [she] lived there" about her use of the road. To prove Redmond and Pouliot had had the Abouds' implied permission to use the road, the Trust was required to show that Aboud's interactions with Redmond had suggested such permission. *Cf. Herzog*, 148 Ariz. at 133, 713 P.2d at 334. We will not impute permission to use property to a claimant or the claimant's predecessors in interest

11

based solely on such permission's having been granted to others. The Trust offered no evidence that John or Emily Aboud had communicated at all with Redmond, much less had the type of interaction that would imply that either had given her permission to continue to use the road.

¶20        The Trust additionally claims that, in 1996, John Aboud had sent Pouliot a letter granting him permission to use the road and, during a subsequent meeting between the two, had consented to Pouliot's plans to construct the garage so Pouliot could obtain a variance for it. These events, the Trust argues, suggest Pouliot had been given Aboud's permission to use the road. But whether Aboud had granted Pouliot either express or implied permission in 1996 is irrelevant because the easement would have already existed, created by Redmond's continuous use of the road, if non-permissive, since 1968. *Cf. Weber v. Roosevelt Water Conserv. Dist.*, 126 Ariz. 509, 511, 617 P.2d 17, 19 (1980) (claimant's subsequent discussion of possible permission with landowner irrelevant when easement already established based on previous years' nonpermissive use).

¶21        The Trust next asserts Redmond "specifically testified that she believed she used [the road] with [the Abouds' predecessors'] permission." The Trust argues Redmond's belief that she had permission to use the road should defeat the presumption that her use was nonpermissive and under a claim of right. In *Lewis v. Pleasant Country, Ltd.*, 173 Ariz. 186, 190, 840 P.2d 1051, 1055 (App. 1992), Division One of this court suggested—albeit in dicta—that a use may be deemed permissive if the user "acknowledge[s]" his or her use of

12

property was "in subordination to the owner's title." This statement is consistent with the requirement that, to acquire an easement by prescription, the claimant must have used the property under a claim of right. *See Paxson*, 203 Ariz 63, ¶ 22, 50 P.3d at 424. "[T]he claim of right is nothing more than the intention of the one wrongfully [using another's property] to . . . use the land . . . irrespective of any semblance or shadow of actual title or right." *Weber*, 126 Ariz. at 510-11, 617 P.2d at 18-19. As the Restatement has further explained, "[u]ses made in subordination to the property owner are not [made under a claim of right], even if the property owner has not given [express] permission, and the use is not otherwise authorized." Restatement (Third) of Property (Servitudes) § 2.16 cmt. f. Thus, although a property owner has shown no other evidence of permission, the owner could overcome the presumption that the claimant's use was not permissive and was made under a claim of right if the claimant clearly acknowledges he or she used the land in subordination to the owner's title. *See Lewis*, 173 Ariz. at 190, 840 P.2d at 1055; *Gusheroski*, 64 Ariz. at 198, 167 P.2d at 393.

¶22 Pouliot asserts Redmond's statement is not an acknowledgment that her use of the road was subordinate to the Trust's predecessors' title because she clarified in later testimony that she "simply believed that others could not stop her from using the [road] because it was the only way to park her car in her carport." Redmond did testify that she simply "took it for granted" that she was entitled to use the road and that, because her carport faced the road when she purchased her property, "there would be no reason not to [use the

13

road]." And, indeed, this testimony could show that Redmond, in making the statement on which the Trust relies, merely meant that none of the Trust's predecessors had told her she could not use the road and that she would have used the road regardless. But such determinations are for the fact finder.

¶23 We express no opinion on how the totality of Redmond's testimony or the circumstances of her original and continued use of the road should be viewed. Because the trial court based its ruling on an erroneous application of the law, we remand the issue to the trial court for redetermination under the correct legal standard.

Adverse possession of adjoining parcel

¶24 Pouliot also contends the trial court erred in rejecting his counterclaim that he had acquired title to the adjoining parcel by adverse possession. The court apparently relied exclusively on its incorrect interpretation of *LaRue*. As discussed above, our case law, including *LaRue*, has consistently followed the presumption adopted in *Gusheroski* regarding prescriptive easements. *See* ¶¶ 9-10, *supra*. Although the requirements for establishing a prescriptive easement and title by adverse possession are not identical, we generally apply their principles interchangeably. *Ammer v. Ariz. Water Co.*, 169 Ariz. 205, 208, 818 P.2d 190, 193 (App. 1991); *see Tenney v. Luplow*, 103 Ariz. 363, 367, 442 P.2d 107, 111 (1968) (applying prescriptive easement principles to adverse possession); *Paxson*, 203 Ariz. 63, ¶ 22, 50 P.3d at 424 (applying adverse possession law to prescriptive easements); *Herzog*, 148 Ariz. at 133, 713 P.2d at 334 (applying prescriptive easement principles to adverse

14

possession).  Moreover, our supreme court has recognized and applied the *Gusheroski* presumption in the adverse possession context.  *Tenney*, 103 Ariz. at 367, 442 P.2d at 111.

¶25        A party claiming title to real property by adverse possession must show that his or her possession of the property was actual, visible, and continuous for at least ten years and that it was under a claim of right, hostile to the claims of others, and exclusive.  *Berryhill v. Moore*, 180 Ariz. 77, 82, 881 P.2d 1182, 1187 (App. 1994); *Chandler v. Jackson*, 148 Ariz. 307, 311, 714 P.2d 477, 481 (App. 1986); *see* §§ 12-521, 12-526.  Once shown to be open, visible, continuous, and undisturbed, however, the possession is presumed to be under a claim of right and not permissive.  *Tenney*, 103 Ariz. at 367, 442 P.2d at 111; *see Knapp v. Wise*, 122 Ariz. 327, 329, 594 P.2d 1023, 1025 (App. 1979) (if possession "complete . . . open and notorious," the law places "true owner on notice that his land is held under an adverse claim of ownership").  Again, the owner of the property then bears the burden of showing he or she expressly or impliedly permitted the claimant's use of the property.  *See Tenney*, 103 Ariz. at 367, 442 P.2d at 111.

¶26        Although the trial court erred in its application of *LaRue*, we must determine, as we did with Pouliot's prescriptive-easement claim, whether the evidence supports the court's judgment in favor of the Trust on Pouliot's claim to have acquired title to the adjoining parcel by adverse possession.  *See Sabino Town & Country*, 186 Ariz. at 149, 920 P.2d at 29; *Inch*, 176 Ariz. at 135, 859 P.2d at 758.  At trial, Redmond testified that, since 1968, she had cared for the adjoining parcel.  She also testified that the propane tank she used

15

had been located on the adjoining parcel continuously since before she purchased the property. Shortly after moving in, Redmond had hired people to clear the adjoining parcel, which had become overgrown, and she then maintained the landscaping on it for the next twenty-eight years. In contrast to her testimony about the road, Redmond never testified she believed she had used this parcel with permission. After Pouliot purchased Redmond's property in 1996, he added decorative rock to the adjoining parcel.

¶27    The Trust does not dispute these facts; neither here nor below has it denied that Pouliot and Redmond used the adjoining parcel openly, continuously, and without challenge for at least ten years. It does suggest, however, that John Aboud had expressly approved Pouliot's use of the adjoining parcel in the 1996 letter. But the letter discussed only Pouliot's use of the road, not the adjacent parcel. And, as explained above, any permission Pouliot may have received in 1996 was irrelevant in any event, because he had already acquired his rights in the parcel from Redmond based on her prior acquisition of the property by adverse possession. *Cf. Weber*, 126 Ariz. at 511, 617 P.2d at 19; *Ammer*, 169 Ariz. at 209, 818 P.2d at 194. In light of the undisputed facts and the applicable law, the trial court erred in ruling against Pouliot on his counterclaim asserting title to the adjoining parcel by adverse possession. We accordingly reverse its judgment on that counterclaim.

Attorney fees and costs

¶28        Pouliot asserts that, if we reverse the judgment of the trial court, we should also vacate its award of attorney fees and costs to the Trust. He further contends that, as the prevailing party, he should be awarded his attorney fees and costs below, pursuant to A.R.S. § 12-1103(B), together with his costs and attorney fees on appeal. *See Lewis v. Pleasant Country, Ltd.*, 173 Ariz. 186, 195, 840 P.2d 1051, 1060 (App. 1992) (fees on appeal available under § 12-1103(B)).

¶29        A prevailing party in an action to quiet title may recover costs and attorney fees if it served a quitclaim deed on the other party twenty days before bringing the action to quiet title, asked the other party to execute the deed, tendered consideration of five dollars along with the request, and if the other party refused to execute the deed. § 12-1103(B). Although Pouliot took those steps as to each of his claims, and although the Trust failed to execute the deeds, Pouliot has only prevailed on his counterclaim asserting title to the adjoining parcel. We therefore award Pouliot his attorney fees and costs relating to that counterclaim.

**Disposition**

¶30        For all the foregoing reasons, we reverse the trial court's judgment in favor of the Trust as to the adjoining parcel and remand the case to the trial court with instructions to enter an appropriate judgment in favor of Pouliot on the Trust's claims and Pouliot's counterclaims pertaining to that parcel. We also vacate the trial court's judgment in favor of the Trust on its claims and Pouliot's counterclaims regarding Pouliot's use of the road, and

17

we remand this matter to the trial court for a determination of those claims consistent with this decision. Because we reverse in part and vacate in part the trial court's judgment, we vacate its award of attorney fees and costs to the Trust. We grant in part Pouliot's request for his attorney fees and costs in the trial court, awarding him that portion of his fees and costs attributable to his counterclaim for adverse possession of the adjoining parcel. We further award him, subject to his compliance with Rule 21(c), Ariz. R. Civ. App. P., his attorney fees and costs on that issue on appeal. All other claims for attorney fees will be determined by the trial court after it resolves Pouliot's prescriptive-easement claim.

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
JOHN PELANDER, Chief Judge