IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STEVEN P. BECK, ET AL.,**
*Plaintiffs/Appellees,*

*v.*

**RICHARD NEVILLE, ET AL.,**
*Defendants/Appellants.*

---

No. CV-22-0134-PR
Filed January 9, 2024

---

Appeal from the Superior Court in Maricopa County
The Honorable Pamela S. Gates, Judge
No. CV2019-013786
**AFFIRMED**

---

Memorandum Decision of the Court of Appeals, Division One
No. 1 CA-CV 21-0197
Filed Apr. 26, 2022
**VACATED**

---

COUNSEL:

Stephen W. Tully (argued), Tully Bailey, LLP, Phoenix, Attorneys for Steven P. Beck, Lesli C. Beck, and Trustees of the UDT-SLGGB Revocable Living Trust

Jared Sutton, Stacey F. Gottlieb (argued), Papetti Samuels Weiss McKirgan LLP, Scottsdale, Attorneys for Richard Neville and September Neville

JUSTICE MONTGOMERY authored the Opinion of the Court, in which JUSTICES BOLICK, LOPEZ, BEENE, KING, and PELANDER (Ret.) joined.* VICE CHIEF JUSTICE TIMMER concurred in part and in the result in a separate opinion.

JUSTICE MONTGOMERY, Opinion of the Court:

¶1        This case addresses two different causes of action that can dispossess a record title holder of property.   Specifically, we consider whether Arizona recognizes a cause of action under the doctrine of "boundary by acquiescence" and, if so, what elements are required to prove it, as well as the burden and standard of proof.   We also consider what is required to establish the "open and notorious" element of an adverse possession claim.

¶2        We hold today that Arizona law recognizes a cause of action for boundary by acquiescence, and that the claimant bears the burden of proving by clear and convincing evidence the elements as set forth in *Mealey v. Arndt*, 206 Ariz. 218, 221 ¶ 13 (App. 2003), with the additional element that the actual boundary is uncertain or disputed.   We also hold that occasionally parking a car partially on an adjoining landowner's property is insufficient to establish the open and notorious element of an adverse possession claim.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3        In 1998 and 2000, the Nevilles and Becks, respectively, purchased adjoining properties.   The Becks' home is north of the Nevilles' at a slightly higher elevation.   Around 2004, the Becks improved the landscaping of their front yard, which included colored rocks for ground cover.   To ensure that the rocks would not flow south down the slope of their yard, they had landscapers install decorative stamped concrete paver bricks.

¶4        However, instead of adhering to the Becks' actual recorded property line, which runs diagonally from the corner of the common wall

---

* Chief Justice Robert M. Brutinel is recused from this matter.   Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

between the two properties to a piece of rebar with a pink streamer, the landscapers mistakenly set the concrete pavers on a line running directly east from the corner of the wall to the edge of the street.[1] This mistake made it appear that the pavers constitute the northern edge of an approximately ten foot, single-vehicle wide, gravel driveway running from the edge of the street straight back to a double gate on the north side of the Nevilles' home. This purported driveway includes the 135 square foot, triangle-shaped area in dispute.

¶5 The Becks assert that after they learned of this mistake, they informed the Nevilles of what had happened. However, the landscaper responsible for the error apparently went out of business and the pavers were never adjusted. The Nevilles allege that in 2014 the Becks made additional changes to the landscaping in which the pavers were removed and then placed back in the same location. The Becks contend that they did not make any landscaping changes in 2014 other than performing routine maintenance that did not involve removing the pavers and that yard maintenance workers have used the disputed area to gain access to the Becks' property.

¶6 In 2019, the Becks remodeled their backyard, necessitating the extension of drainage pipes from the end of the common wall down to the edge of the street. The extension would have required the Becks to dig up the disputed property, after which they planned to place the pavers along the recorded property line. The Becks informed the Nevilles of the anticipated construction and the Nevilles responded that they, not the Becks, owned the disputed property. The Becks claim this is the first time the Nevilles asserted such ownership. The Nevilles then sent a cease-and-desist letter to the Becks, stating that the Nevilles were the owners of the property by adverse possession and boundary by acquiescence.

¶7 The Becks, asserting ownership and entitlement to possession of the disputed property, filed this action to quiet title pursuant to A.R.S. § 12-1101. The Nevilles filed a counterclaim to quiet title on their behalf

---

[1] We have included a photo from the record depicting the area as an appendix to this Opinion. The record also includes a survey report dated October 19, 2019, that identifies the rebar as the southwest corner of the Becks' lot.

based on adverse possession and boundary by acquiescence. On cross-motions for summary judgment, the trial court concluded that the Becks met their burden to quiet title and that the Nevilles had failed to provide sufficient evidence to establish their claims. It therefore granted summary judgment in favor of the Becks.

¶8 The Nevilles appealed. In a split decision, the court of appeals reversed the summary judgment and remanded the case to the trial court for further proceedings. *Beck v. Neville*, No. 1 CA-CV 21-0197, 2022 WL 1218629, at *4 ¶ 22 (Ariz. App. Apr. 26, 2022) (mem. decision). The majority held that summary judgment was incorrectly entered because the parties' declarations presented disputed facts concerning both the adverse possession and boundary by acquiescence claims. *Id.* at *2 ¶ 12, *3 ¶ 16. The dissent agreed with the trial court that the Nevilles had failed to present sufficient evidence to support those claims. *Id.* at *6 ¶ 30 (Morse, J., dissenting).

¶9 We granted review because the circumstances under which a claimant may quiet title to a portion of a record owner's real property is an important issue of statewide concern. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶10 We "review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the party against whom summary judgment was entered." *Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267 ¶ 10 (2021). Where cross-motions for summary judgment are filed, "summary judgment in favor of either party is appropriate only 'if the facts produced in support of the [other party's] claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense.'" *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 13 (2003) (alteration in original) (quoting *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990)).

## A. Boundary by Acquiescence

¶11 We begin by addressing whether Arizona recognizes the doctrine of boundary by acquiescence and, if so, what is required to prove

4

such a claim.

1.  Recognition

¶12      The parties disagree on whether Arizona has recognized a cause of action based on the doctrine of boundary by acquiescence. The doctrine permits adjacent landowners to "mutually recognize a boundary and act as if it were the true property line." Thomas Phillip Boggess V, *Cause of Action to Establish Boundary Between Adjoining Property Owners*, 42 Causes of Action 2d 489, § 2 (2023) [hereinafter "Boggess"]. The purpose of the doctrine is to "avoid[] litigation and promote[] stability in landownership." *Bahr v. Imus*, 250 P.3d 56, 65 ¶ 35 (Utah 2011) (quoting *Staker v. Ainsworth*, 785 P.2d 417, 423 (Utah 1990)).

¶13      Although the Becks acknowledge that this Court and the court of appeals have discussed such a cause of action, they argue that this Court has not affirmatively recognized it and no Arizona court has set forth its elements. The Nevilles argue that there is no need to "affirmatively recognize" boundary by acquiescence because it is a part of the common law, which Arizona courts have adopted to the extent it is not inconsistent with constitutional or statutory law. Additionally, the Nevilles assert that Arizona *has* explicitly recognized boundary by acquiescence in *Hein v. Nutt*, 66 Ariz. 107 (1947), or, at the very least, in *Mealey*.[2]

¶14      *Hein* involved an attempt to determine the corners of various parcels of land to establish the boundaries of adjoining pieces of property. *Hein*, 66 Ariz. at 108–09. As part of its analysis, this Court noted,

> The period of acquiescence must continue for the period prescribed by statutes relating thereto or required by statutes of limitations relating to the acquisition of title by adverse possession. Arizona has no statute on acquiescence and our applicable statute of limitations on adverse possession requires five years. Therefore, even assuming that

---

[2]  The cases of *Trevillian v. Rais*, 40 Ariz. 42, 45–46 (1932), and *Cook v. Stevens*, 51 Ariz. 467, 473 (1938), mentioned acquiescence in the location of a boundary even prior to *Hein*, though each respective court decided the issue in the context of adverse possession.

the required elements of acquiescence were present, the necessary time element is lacking.

*Id.* at 114 (cleaned up). Thus, the boundary by acquiescence claim in *Hein* failed because it lacked the required amount of time, not because the Court declined to recognize the cause of action.

¶15 Boundary by acquiescence was next at issue in *Wacker v. Price*, 70 Ariz. 99 (1950). Therein, this Court observed: "Every lot in block 31 south of lots 6 and 8 here involved have definite boundaries established by acquiescence of the parties for a much longer period than is required to establish title by adverse possession." *Id.* at 104–05. Accordingly, this Court treated "the boundaries fixed by the property owners themselves" as the best evidence of the boundaries. *Id.* at 106–07. Therefore, neither "the city surveyor nor any other surveyor ha[d] any authority to establish new boundaries which must of necessity affect the property rights of all property owners concerned where they cannot establish title by adverse possession." *Id.* at 107. Thus, this Court clearly acknowledged the doctrine of boundary by acquiescence and treated it as distinct from adverse possession.

¶16 More recently, the court of appeals cited *Hein* in *Mealey*, and explicitly stated that Arizona "has acknowledged the doctrine of boundary by acquiescence." 206 Ariz. at 221 ¶ 13. We concur. A boundary by acquiescence cause of action has been part of our jurisprudence for decades, albeit sparingly referenced and little discussed. Accordingly, we consider its application in this case.

## 2. Elements

¶17 The court of appeals in *Mealey* correctly noted that no Arizona court had "clearly defined the elements" of a boundary by acquiescence claim. *Id.* The court therefore looked to other jurisdictions, which generally require proof of "(1) occupation or possession of property up to a clearly defined line, (2) mutual acquiescence by the adjoining landowners in that line as the dividing line between their properties, and (3) continued acquiescence for a long period of time." *Id.* For Arizona, the required time period is "ten years, the same as that for adverse possession." *Id.*; *see also* A.R.S. § 12-526(A). As to whether proof is required that the true boundary is disputed or uncertain, the *Mealey* court did not reach a

conclusion in the case before it but did observe in a footnote that jurisdictions differ as to whether this is a required element. *Mealey*, 206 Ariz. at 221 ¶ 13 n.2.[3]

¶18 Although the parties do not disagree with the specific list of elements set forth in *Mealey*, they differ over whether we should require proof of an uncertain or disputed boundary as an additional element. The Becks argue that claimants should also be required to prove there was "uncertainty or dispute" as to the location of the true boundary. The Nevilles ask us to precisely follow *Mealey* and argue that the court of appeals' omission of any requirement of an uncertain or disputed boundary means that this may, at best, be an affirmative defense to a boundary by acquiescence claim with the party asserting it having the burden of proof.[4]

¶19 Jurisdictions cited by *Mealey* that discuss the reasons for not requiring dispute or uncertainty either place primary emphasis on the length of time involved or disregard it as a policy choice. In *Moeller v. Graves*, 367 S.W.2d. 426, 427 (Ark. 1963), the Arkansas Supreme Court remarked that "[t]he answer to [whether a doubt or dispute is required] is that . . . title nevertheless vested by adverse possession after the agreement had been in force for the full statutory period of seven years." The New Mexico Supreme Court concluded similarly in *Woodburn Bros. v. Grimes*, 275 P.2d 850, 852 (N.M. 1954), observing that "these elements are not essential in every case. A boundary line may be established by acquiescence where

---

[3] The court of appeals specifically cited to cases from Arkansas, Florida, New Mexico, South Carolina, Texas, and Utah. *Rabjohn v. Ashcraft*, 480 S.W.2d 138, 141 (Ark. 1972) (uncertainty not required); *Hutchins v. Strickland*, 674 So.2d 870, 873 (Fla. Dist. Ct. App. 1996) (uncertainty required); *Sproles v. McDonald*, 372 P.2d 122, 125–26 (N.M. 1962) (uncertainty not required); *Knox v. Bogan*, 472 S.E.2d 43, 49 (S.C. 1996) (uncertainty not required); *Doria v. Suchowolski*, 531 S.W.2d 360, 364 (Tex. Civ. App. 1975) (uncertainty required); *Ainsworth*, 785 P.2d at 424 (objective uncertainty not required).

[4] This argument seems to follow the reference in *Mealey* to a commentator's observation "that, where a plaintiff need not prove uncertainty, uncertainty is presumed, but the defendant can always defeat the claim of boundary by acquiescence by affirmatively proving that the location of the true boundary was known." 206 Ariz. at 221 ¶ 13 n.2 (citation omitted).

there has been long recognition by abutting owners." And in *Ainsworth*, the Utah Supreme Court eliminated the requirement to prove uncertainty because "in contrast to the purpose of the objective uncertainty requirement, it now appears that its use may increase litigation over boundaries rather than decrease it." 785 P.2d at 423.

¶20 We disagree with these courts' conclusions and find that an element of uncertainty or a dispute as to the true boundary line is necessary for three reasons. First, requiring uncertainty underpins the landowners' need to acquiesce to a boundary to reliably manage ownership of real property. "Without this doubt, there would be no need to acquiesce in a boundary." Boggess, § 12 (noting further that "[i]t is generally understood that underlying the doctrine of establishing a boundary by acquiescence is that there was a doubt or dispute as to the true location of the true boundary line"). It is thus axiomatic that when the true boundary is known it is not possible for adjoining landowners to establish a new boundary by acquiescence. Second, there is no need to facilitate the recognition of an agreed-upon boundary where true boundaries can be readily ascertained, as the record in this case demonstrates. *See Bryant v. Blevins*, 884 P.2d 1034, 1041 (Cal. 1994) ("[W]hen existing legal records provide a basis for fixing the boundary, there is no justification for inferring, without additional evidence, that the prior owners were uncertain as to the location of the true boundary or that they agreed to fix their common boundary at the location of a fence."); *Armitage v. Decker*, 267 Cal. Rptr. 399, 407–09 (Cal. Ct. App. 1990) (rejecting a claim that a fence line served as a property boundary line where neighbors had treated it as such for over eighty years because, in part, the actual line was consistently described in recorded deeds and established by surveys). Third, the requirement for uncertainty or dispute ensures that a claim of boundary by acquiescence does not result in the unwitting transfer of property. Letting a neighbor use property for a limited purpose or foregoing the full use of one's property may be nothing more than mere courtesy or done out of practical necessity. *See, e.g.*, *Fuoss v. Dahlke Fam. Ltd. P'ship*, 984 N.W.2d 693, 703 (S.D. 2023) (noting that "the mere fact that a landowner allows his neighbor to occupy or use part of his land does not automatically fix the boundary between them or give the neighbor a right to use or take the property in perpetuity" (quoting *City of Deadwood v. Summit, Inc.*, 607 N.W.2d 22, 30 (S.D. 2000))).

**¶21** We therefore hold, consistent with the elements initially set forth in *Mealey*, that the party asserting a boundary by acquiescence claim must prove (1) occupation or possession of property up to a clearly defined line; (2) mutual acquiescence by the adjoining landowners in that line as the dividing line between their properties; (3) continued acquiescence for ten years; and, for the reasons stated above, (4) uncertainty or dispute as to the true boundary. Additionally, the party asserting a boundary by acquiescence claim bears the burden of proof for each element. *Mealey*, 206 Ariz. at 223 ¶ 23. We next turn to the standard of proof required to establish a boundary by acquiescence claim.

3.  Standard of proof

**¶22** Although the *Mealey* court concluded "that insufficient evidence was presented of a clear, certain, visible boundary to which the parties acquiesced," it did not state the standard of proof for that element or any other. *Id*. at 224 ¶ 25. The court did, though, observe in the same footnote addressing the element of dispute or uncertainty regarding the true boundary that "some jurisdictions require . . . proof [of that element] by clear and convincing evidence." *Id*. at 221 ¶ 13 n.2.[5] No Arizona court, however, has set forth the quantum of proof required to establish all the elements.

**¶23** "The function of a standard of proof . . . is to 'instruct the factfinder concerning the degree of confidence our society thinks he should

---

[5] The cases cited by the *Mealey* court applied a clear and convincing standard of proof for each element. *Calthorpe v. Abrahamson*, 441 A.2d 284, 289 (Me. 1982) ("The proof of acquiescence must be clear and convincing since recognition of such a boundary has the effect of transferring ownership of the disputed property without requiring compliance with the Statute of Conveyances."); *Manz v. Bohara*, 367 N.W.2d 743, 748 (N.D. 1985) (concluding that "one claiming property to the exclusion of the true owner through the doctrine of acquiescence" must prove it by clear and convincing evidence just as a claim of adverse possession must be proved); and *City of Deadwood*, 607 N.W.2d at 27 ("The burden of proving a boundary by the doctrine of acquiescence is identical to the strident standard required for proving adverse possession. One claiming property to the exclusion of the true owner through the doctrine of acquiescence bears the burden of proving the action by clear and convincing evidence.").

have in the correctness of factual conclusions for a particular type of adjudication.'" *Addington v. Texas*, 441 U.S. 418, 423 (1979) (quoting *In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring)). Accordingly, even though the parties did not address the applicable standard, we do so now as part of setting forth the elements of the cause of action. *Santosky v. Kramer*, 455 U.S. 745, 755–56 (1982) (stating that "the degree of proof required in a particular type of proceeding 'is the kind of question which has traditionally been left to the judiciary to resolve'" (quoting *Woodby v. INS*, 385 U.S. 276, 284 (1966))). "The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington*, 441 U.S. at 423. Given that a successful boundary by acquiescence claim transfers record ownership of disputed property, we must necessarily consider the importance of the individual ownership of real property.[6]

¶24 Recognition of the importance of the ownership of property predates the founding of this country. The Virginia Declaration of Rights ("Virginia Declaration"), enacted on June 12, 1776, with which our Arizona Constitution shares key provisions,[7] pronounced:

---

[6] Although courts have applied a clear and convincing standard of proof for other interests concerning the ownership of property, such as adverse possession, *Miller v. McAlister*, 151 Ariz. 435, 437, (App. 1986), and prescriptive easements, *Sabino Town & Country Ests. Ass'n v. Carr*, 186 Ariz. 146, 149 (App. 1996), this Court has never set forth why such a standard applies.

[7] *Compare* Ariz. Const. art. 2, § 1 ("A *frequent recurrence to fundamental principles* is essential to the security of individual rights and the perpetuity of free government.") (emphasis added), *with* Virginia Declaration of Rights, § 15 ("That no free government, or the blessings of liberty, can be preserved to any people, but by a firm adherence to justice, moderation, temperance, frugality, and virtue; by *frequent recurrence to fundamental principles*.") (emphasis added); *compare* Ariz. Const. art. 2, § 2 ("*All political power is inherent in the people, and governments derive their just powers from the consent of the governed*, and are established to protect and maintain individual rights.") (emphasis added), *with* Virginia Declaration of Rights, § 2 ("That *all power is vested in, and consequently derived from, the people*; that magistrates are their trustees and servants and at all times amenable to them.") (emphasis added).

> That all men are by nature equally free and independent and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity; namely, the enjoyment of life and liberty, *with the means of acquiring and possessing property*, and pursuing and obtaining happiness and safety.

§ 1 (emphasis added). It is noteworthy that the language of § 1 is also reflected in the preamble of the Declaration of Independence:

> We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed.[8]

The Declaration of Independence para. 2 (U.S. 1776).

¶25 The nature of property rights was acknowledged as early as 1795 in our nation's jurisprudence. In the case of *VanHorne's Lessee v. Dorrance*, 2 U.S. 304, 310 (1795), federal Supreme Court Justice William Patterson observed that "the right of acquiring and possessing property, and having it protected, is one of the natural, inherent, and unalienable rights of man." And in 1837 Justice Henry Baldwin in a concurring opinion likewise stated that "[i]n this country, every person has a natural and inherent right of taking and enjoying property, which right is recognised [sic] and secured in the constitution of every state." *Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*, 36 U.S. 420, 650 (1837) (Baldwin, J., concurring). *See also Piqua Branch of State Bank of Ohio v. Knoop*, 57 U.S. 369, 397 (1853) (noting the constitutional guarantee of the natural right to acquire and enjoy private property); *Maxwell v. Griswold*, 51

---

[8] The similarity in language is unsurprising, though, as Thomas Jefferson relied on the Virginia Declaration to draft the Declaration of Independence. *Thomas Jefferson and the Declaration of Independence*, Thomas Jefferson Found., https://www.monticello.org/thomas-jefferson/jefferson-s-three-greatest-achievements/the-declaration/jefferson-and-the-declaration/ (last visited Jan. 1, 2024) ("Some of his language and many of his ideas drew from well-known political works, such as George Mason's Declaration of Rights.").

U.S. 242, 252 (1850) (acknowledging the natural right of private property ownership).

¶26     The acknowledgement of the nature and importance of property rights in the Virginia Declaration, the Declaration of Independence, and in early constitutional jurisprudence is significant because Arizona's Enabling Act, authorizing a convention to draft a state constitution, required that "[t]he constitution shall be republican in form and make no distinction in civil or political rights on account of race or color, and *shall not be repugnant to the Constitution of the United States and the principles of the Declaration of Independence*." A.R.S., Enab. Act, Sec. 20 (emphasis added).   Thus, consistent with the principles of the Declaration of Independence and the federal and Arizona Constitutions, the ownership of property is a natural right of significant interest which we have a duty to protect. *Bristor v. Cheatham*, 75 Ariz. 227, 234 (1953) ("It is the court's duty to protect constitutional rights."); *see also Bailey v. Myers*, 206 Ariz. 224, 227 ¶ 11 (App. 2003) ("The framers of our Constitution understood that one of the basic responsibilities of government is to protect private property interests.").

¶27     Turning to the specific standard of proof to apply, we note that where the interest is monetary, a standard of the preponderance of the evidence generally suffices. *Addington*, 441 U.S. at 423; *but see Am. Pepper Supply Co. v. Fed. Ins. Co.*, 208 Ariz. 307, 309 ¶ 11 (2004) (discussing clear and convincing burden of proof for fraud claims); *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 331-32 (1986) (applying heightened standard of proof to punitive damages claims); *O'Hair v. O'Hair*, 109 Ariz. 236, 240 (1973) (requiring clear and convincing proof to establish donative intent for a gift). Where an individual's liberty interest is at stake, by contrast, we require proof beyond a reasonable doubt. *Addington*, 441 U.S. at 423–24.   Given the "particularly important individual interests" before us concerning the ownership of private property, we hold that a clear and convincing standard of proof is required for each of the elements of a boundary by acquiescence claim. *Id.* at 424.

¶28     We next examine the facts of this case as they relate to each of the elements under a clear and convincing standard of proof.

4. Nevilles' claim

a. *Proof of dispute or uncertainty over the true boundary*

¶29    Neither party argues that there is any dispute or uncertainty regarding the true boundary. In fact, the boundary was clearly demarcated in the public deeds that are part of the record and the Nevilles acknowledged "that the disputed land lies within the formal boundary lines of the Beck property." At the outset, then, the failure to offer any evidence of an uncertain or disputed boundary means the Nevilles' boundary by acquiescence claim fails as a matter of law. Nevertheless, given the dearth of caselaw regarding this claim, we proceed to consider the remaining elements. *See Leach v. Reagan*, 245 Ariz. 430, 441 ¶ 53 (2018) (considering otherwise moot issue that was likely to recur to provide guidance to future litigants and courts).

b. *Occupation or possession up to a clearly defined line*

¶30    The Nevilles argue that they have parked vehicles in the area described as their driveway, which includes the disputed area, since 2004. The Nevilles, though, do not provide any evidence of the frequency or regularity with which they parked a vehicle on the driveway. Regardless, the Nevilles assert that whether they occupied the disputed land is a fact question for the jury. However, if the facts produced "have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense," there is no genuine dispute of a material fact to submit to a jury. *Reeves*, 166 Ariz. at 309.

¶31    To establish a claim of boundary by acquiescence, the claimant "must occupy his or her property . . . in such a manner as to place the nonclaimant on notice that he or she claims the property so occupied." *Anderson v. Fautin*, 379 P.3d 1186, 1193–94 ¶ 26 (Utah 2016). Accepting the Nevilles' parking assertion as true only means that on those occasions when they parked primarily on their own property, they also partially intruded into a portion of the disputed property. This limited use is insufficient to put the Becks on notice that the Nevilles were claiming the entirety of the 135 square feet as their property. *See Huck v. Ken's House LLC*, 511 P.3d 1220, 1223 ¶ 8, 1225 ¶ 14 (Utah Ct. App. 2022) (finding insufficient occupation where disputed land was used by tenants of an apartment

building "to walk their pets" and building owner sometimes used it "to access the side of the apartment building for maintenance-related tasks . . . [and] 'the main use' . . . was for safety and maintenance and to comply with the city's ten-foot setback requirement").

¶32        In contrast, cases finding the requisite occupation involve activities traditionally and more broadly exercised by owners. *See, e.g.*, *Hartley v. Ruybal*, 414 P.2d 114, 116 (Colo. 1966) (grazing of livestock on land in question); *Hansen v. Kurry Jensen Props. LLC*, 493 P.3d 1131, 1141–42 ¶ 35 (Utah Ct. App. 2021) (upholding a claim of boundary by acquiescence where record title holder "required the [adjacent landowner] to remove a tree that was, in fact, on the [record title owner's] deeded property, and they never objected to the [adjacent landowner] erecting the carport, chain link fence, or garage within the approximate ten-foot area between the deeded line and the claimed boundary line"); *Huntington v. Riggs*, 862 N.E.2d 1263, 1270 (Ind. Ct. App. 2007) ("[Claimants] used and occupied the [disputed land]. They improved upon it by mowing the usable portion of the wooded tract, as they did their own yard, and by building a driveway on its northwest corner.").

¶33        The Nevilles also claim that they refused to permit the Becks to park on the driveway "[o]n several known occasions since at least 2004." However, the record illustrates that it is not possible for the Becks to park there without also parking on the Nevilles' property. *See* Appendix. Thus, precluding the Becks from parking on the driveway is just as much, if not more, an exercise of the Nevilles' right to exclude others from their *own* property. *Champie v. Castle Hot Springs Co.*, 27 Ariz. 463, 468 (1925) ("One of the most cherished principles of our common law, to use the old phrase, is that a man's house is his castle, from which he may exclude any and all persons at will . . . .") (internal quotation marks omitted). Thus, the Nevilles' evidence concerning parking on the gravel driveway up to the pavers is insufficient to establish the required occupation or use of the disputed property and therefore does not create a genuine issue of a material fact regarding this element.[9]   *See* Ariz. R. Civ. P. 56(a).

---

[9]   Our resolution of this issue renders it unnecessary to determine whether the pavers also constituted a clearly marked boundary.

c. *Mutual acquiescence by the adjoining landowners*

¶34        The Nevilles assert that the Becks have always recognized the pavers as the boundary line.    The Becks deny any such recognition.

¶35        "A boundary is established by acquiescence when there is mutual recognition of a given line by the adjoining owners . . . ."   *Roy v. Woodstock Cmty. Tr., Inc.*, 94 A.3d 530, 549 ¶ 60 (Vt. 2014) (citation omitted) (internal quotation marks omitted); *see also Oppliger v. Vineyard*, 803 N.W.2d 786, 804 (Neb. Ct. App. 2011) ("In order to claim a boundary line by acquiescence, both parties must have knowledge of the existence of a line as the boundary . . . .").

¶36        One example of what mutual acquiescence might look like is discussed in *Harris v. Robertson*, 813 S.W.2d 252 (Ark. 1991), cited by *Mealey*. 206 Ariz. at 223 ¶ 20.    In *Harris*, the adjoining landowners "walked over the land, agreed on the boundaries, and fixed all corners and turning points with iron pins."    813 S.W.2d at 252; *see also O'Hearne v. McClammer*, 42 A.3d 834, 840 (N.H. 2012) (finding dispositive the fact that adjacent property owners had "walked the boundary line together on multiple occasions throughout the years and identified the boundary markers").    In contrast, the record here lacks any evidence that the parties engaged in any kind of joint effort to establish the boundary between their properties or otherwise agreed that the pavers marked the boundary.    Instead, the record reflects that the parties never discussed the pavers as a boundary prior to this dispute and disagree over whether they constitute a boundary at all. *Reynolds v. GFM, LLC*, 429 S.W.3d 336, 340 (Ark. Ct. App. 2013) (observing that "the fact that a landowner puts a fence inside his boundary line does not mean that he is acquiescing in the fence as the boundary, thereby losing title to the strip on the other side").    Additionally, the Becks' inability to use the disputed land for parking does not, in and of itself, establish the Nevilles' claim that the Becks acquiesced in a boundary marked by the pavers.    *Carter v. Hanrath*, 925 P.2d 960, 962 (Utah 1996) (concluding that record title owner's inability to use part of their property where it was landlocked "cannot realistically be characterized as acquiescence or consent by silence").

¶37        Citing *Segal v. Carstensen*, the Nevilles assert that acquiescence may also be established tacitly or as a result of "consent by silence."    No. 2 CA-CV 2019-0208, 2020 WL 5629766, at *4 ¶ 18 (Ariz. App. Sept. 21, 2020)

(mem. decision) (quoting *Sachs v. Bd. of Trs.*, 557 P.2d 209, 216–17 (N.M. 1976). Two points. First, because *Segal* is a memorandum decision by the court of appeals, it is not precedential authority, although it may be cited for persuasive value. *See* Ariz. R. Sup. Ct. 111(c)(1)(C). Second, boundary by acquiescence requires *mutual* acquiescence and the record does not contain evidence permitting the fact finder to infer that the Becks acquiesced to the pavers as the new property line. *See Acquiescence*, Black's Law Dictionary (11th ed. 2019) (defining "acquiescence" as one's "tacit or passive acceptance; implied consent to an act"). This is so despite the fact that it was the Becks who installed the pavers. As stated by the North Dakota Supreme Court in *Sauter v. Miller*, "[a] property owner does not acquiesce in a fence as a boundary merely because he builds the fence upon his own property and not upon the property line. The intent must have been to establish the fence as the boundary, not a mere barrier between the properties." 907 N.W.2d 370, 375 ¶ 21 (N.D. 2018) (internal citation omitted) (internal quotation marks omitted); *accord Barnett v. Gomance*, 377 S.W.3d 317, 322 (Ark. Ct. App. 2010).

¶38 The Nevilles also cite *Trevillian*, 40 Ariz. at 45–46, in support of the proposition that acquiescence does not require actual knowledge of the true boundary. However, *Trevillian* discusses adverse possession and the rule as stated therein is inapposite to a boundary by acquiescence claim. *Id.* at 45 ("The law applicable to such a situation we believe to be as follows: Where a person, acting under a mistake as to the true boundary line between his land and that of another, takes possession of land of another believing it to be his own, up to a mistaken line, claims title to it and so holds, the holding is adverse and, if continued for the requisite period, will give title by *adverse possession*." (emphasis added) (citation omitted) (internal quotation marks omitted)). Ultimately, the record does not contain sufficient evidence to create a genuine issue of a material fact regarding the Becks' acquiescence in a boundary marked by the pavers.

d. *Continued acquiescence for a sufficient period of time*

¶39 The period of time required to establish a boundary by acquiescence is ten years, the same as that for a claim of adverse possession. *Mealey*, 206 Ariz. at 221 ¶ 13 (defining "a long period of time" as "ten years, the same as that for adverse possession"); § 12-526(A). Here, the Nevilles purchased the property in 1998. The Becks purchased their property in 2000. The pavers were originally placed in 2004, and the Nevilles maintain

that they have used the driveway consistent with the line of pavers since then.   Thus, the Nevilles have established the requisite amount of time.

**¶40**　　　　Aside from facts establishing the requisite time frame, the evidence produced by the Nevilles in support of the remaining elements is insufficient to prove a boundary by acquiescence claim by clear and convincing evidence.   Accordingly, even if some facts are in dispute, "reasonable people could not agree with the conclusion advanced" by the Nevilles that they acquired title to the Becks' 135 square feet through boundary by acquiescence. *Andrews*, 205 Ariz. at 240 ¶ 13. We therefore hold that the Nevilles' claim fails as a matter of law.

## B. Adverse Possession

**¶41**　　　　The Nevilles also claim ownership of the disputed land through adverse possession based on their use and maintenance of the disputed property—in addition to their own property—as a gravel driveway.   Alternatively, the Nevilles assert that the record on this claim at least raises an issue of material fact that must be addressed by a jury at trial, rather than decided as a matter of law.   The Becks argue that the trial court properly found that the Nevilles' evidence fails to establish open and notorious possession of the disputed property by clear and convincing evidence.

**¶42**　　　　Adverse possession is the "actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."   A.R.S. § 12-521(A)(1).   Thus, a claim of ownership of disputed land must be open, notorious, continuous, exclusive, and hostile.   *Spillsbury v. Sch. Dist. No. 19 of Maricopa Cnty.*, 37 Ariz. 43, 47 (1930); *see also Tenney v. Luplow*, 103 Ariz. 363, 367 (1968). Possession must also be continuous for the statutory period of ten years. § 12-526(A).   The party claiming title by adverse possession has the burden to show that the elements are met.   *Whittemore v. Amator*, 148 Ariz. 173, 175 (1986).   Finally, because "[c]laims of adverse possession are disfavored," *Stat-o-matic Ret. Fund v. Assistance League of Yuma*, 189 Ariz. 221, 222 (App. 1997), they must be proved by clear and convincing evidence, *Miller v. McAlister*, 151 Ariz. 435, 437 (App. 1986) (discussing requirement that adverse possession be proved by "clear and positive evidence, which is

analogous to the rigorous 'clear and convincing' standard of proof").

¶43        With respect to the open and notorious element, the Nevilles assert that they have used the 135 square feet in question—in addition to their own property—as a gravel driveway and that they have on every known occasion ordered the Becks and any of their guests who have attempted to park in the gravel area to remove their vehicles.  Thus, the Nevilles conclude that their use of the disputed property as part of a gravel driveway satisfies the "open and notorious" element and also cite *Inch v. McPherson*, 176 Ariz. 132 (App. 1992), in support of their argument.  In contrast, the Becks claim that the Nevilles' occasional parking of a portion of a car on a gravel section of land does not "fly the flag" to put them on notice of the Nevilles' claim of ownership of the disputed property.

¶44        "The open and visible character of possession by an adverse claimant must consist of such acts of ownership as are sufficient to 'hoist his flag' and keep it flying over the land."  *Conwell v. Allen*, 21 Ariz. App. 383, 384 (1974).  Put another way, "there must be physical facts which openly evince and give notice of an intent to hold the land in hostile dominion."  *Id*.

¶45        We initially note that the Nevilles' reliance on *Inch v. McPherson* is misplaced.  *Inch* is distinguishable from this case in two significant respects.  First, *Inch* involved a claim for a prescriptive easement rather than for a claim of title to the land itself.  *See* 176 Ariz. at 134–35.  Although this Court has stated that "[t]he elements necessary to establish [adverse possession and a prescriptive easement] are substantially the same, and the rules of law relating to title by adverse possession are, in general, applicable to easements by prescription," establishing a prescriptive easement does not establish adverse possession of the property in question.  *See Lewis v. Farrah*, 65 Ariz. 320, 323 (1947). To obtain a prescriptive easement, "[i]t is only the *use* of the land which must be shown to be open, notorious and adverse."  *Etz v. Mamerow*, 72 Ariz. 228, 231 (1951) (emphasis added).  Put another way, "an action to establish an easement does not involve possession or occupation of the land," whereas adverse possession to acquire title to the land does.  *Id*. at 231.  Thus, the owner does not lose ownership of land in a prescriptive easement case.  *Id*.  Instead, the owner is precluded from using the land in a manner inconsistent with the easement.  *Id*.  Accordingly, the focus in *Inch* was on the facts that evinced the claimants' use of the property

rather than on the types of acts which would demonstrate an adverse claim of ownership.

**¶46** Second, the claimants in *Inch* did much more to demonstrate the open and notorious use of the land in dispute than the Nevilles have. In *Inch*, the court of appeals noted that the claimants "laid down gravel for a driveway between their house and [their neighbor's] hedge," which was the disputed land, "and habitually parked their cars on their side of the hedge before it was taken down." 176 Ariz. at 134. The court therefore found that "the Inchs used the land by laying gravel *and* parking on it," and that such use satisfied the open and notorious requirement for adverse possession of a prescriptive easement. *Id.* at 135 (emphasis added).

**¶47** Here, the Nevilles' argument rests primarily on the occasional parking of a portion of their vehicle on the disputed land. But "[t]he mere use of another's property is insufficient to create ownership or prescriptive use, without some additional act or circumstance indicating that the use is not merely permissive but hostile to the owner's rights." *Herzog v. Boykin*, 148 Ariz. 131, 133 (App. 1985) (internal citation omitted). Nor do "[o]ccasional or casual acts . . . ordinarily give sufficient notice to the true owner that the property is being held adversely." *Gospel Echos Chapel, Inc. v. Wadsworth*, 19 Ariz. App. 382, 385 (1973). No facts are asserted indicating that parking on the small, narrow strip was anything except casual or an accidental intrusion from the main area of the gravel drive used by the Nevilles, and possession cannot be casual, accidental, or permissive. *See Higginbotham v. Kuehn*, 102 Ariz. 37, 39 (1967). Thus, occasionally parking in the gravel area does not establish an actual appropriation of the disputed land. This is very different from the types of cases where continuous use of a driveway was sufficient for adverse possession purposes. *See, e.g., Trokey v. R.D.P. Dev. Grp., L.L.C.*, 401 S.W.3d 516, 523 (Mo. Ct. App. 2013) (describing daily use for ingress/egress over large area where claimants "'used and maintained' the disputed property for 45 years by mowing and trimming grass, storing items of personal property, and maintaining a seawall").

**¶48** Additionally, the Nevilles cannot rely on the placement of the pavers as somehow putting the Becks on notice of the Nevilles' claim because it was the Becks who were responsible for the installation. As for the assertion that the Nevilles maintained the driveway, there are no facts presented to explain just how the Nevilles "maintained" the area. In sum,

there is insufficient evidence to establish a genuine dispute of a material fact regarding the notice required for an adverse possession claim.

**¶49**         Finally, the Nevilles' claim of ownership is not hostile or exclusive.   Assuming as true that the Nevilles prevented the Becks or their guests from parking on the disputed area, such action would still be insufficient to support their claim.   As noted above, most of the gravel area belongs to the Nevilles and any parking on the driveway would necessarily occur on a portion of their property.   And nothing in the record shows the Nevilles prevented the specific use of the 135 square feet in question, especially as it concerns the use of the disputed area by the Becks' yard maintenance personnel.   Furthermore, we once again note that it was the Becks who installed the concrete pavers, not the Nevilles.   Accordingly, the pavers were not installed to keep the Becks out by enclosing the disputed area.   *See State v. Lewis*, 236 Ariz. 336, 346 ¶ 42 (App. 2014) (defining "enclose" as "[t]o surround on all sides; close in" and "[t]o fence in so as to prevent common use" (citing The American Heritage Dictionary 587 (5th ed. 2011)) (brackets in original)).   Therefore, the Nevilles failed to present sufficient evidence of material facts to establish by clear and convincing evidence that they acquired title by adverse possession.   We hold that their claim fails as a matter of law.

**DISPOSITION**

**¶50**         For all the foregoing reasons, we vacate the court of appeals' memorandum decision and affirm the trial court's judgment.   We award the Becks' taxable costs as the prevailing parties and grant their request for reasonable attorney fees incurred on appeal pursuant to A.R.S. §§ 12-341 and 12-1103, subject to compliance with Arizona Rule of Civil Appellate Procedure 21.

**APPENDIX**



TIMMER, V.C.J., concurring in part and in the result,

**¶51**         I agree entirely with the majority's disposition in this case, including that a plaintiff must prove a boundary-by-acquiescence claim by clear and convincing evidence.  But I do not agree with including paragraphs 24 through 26, which cite the Virginia Declaration of Rights, the Declaration of Independence, and federal constitutional jurisprudence to explain the significance of property rights in Arizona—an uncontested issue.

**¶52**         I am concerned that including these paragraphs will impact the interpretation and application of state constitutional rights without input from any party or interested amici.  The majority ties these authorities to Arizona's Enabling Act and emphasizes that our state constitution "shall not be repugnant to the Constitution of the United States and the principles of the Declaration of Independence."  *See supra* ¶ 26.  Under the Supremacy Clause, of course, the federal constitution preempts any conflicting state constitutional provisions.  *See* U.S. Const. art. 6, cl. 2.  But the majority arguably suggests that through the Enabling Act, the Declaration of Independence and its proclamation of "natural right[s]" similarly constrain Arizona's constitution.  *See supra* ¶ 26.  I am unwilling to commit to that position absent argument from interested parties and a comprehensive study of the issue, neither of which occurred in this case.